IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | No. |
| FLORIDA DEPARTMENT OF | ) | |
| ENVIRONMENTAL PROTECTION | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | CIVIL COMPLAINT |
| | ) | |
| CF Industries, Incorporated, | ) | |
| Defendant. | ) | |
| | ) | |

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys acting at the request of the Administrator of the United States Environmental Protection Agency (EPA), and the Florida Department of Environmental Protection (FDEP), by and through its Office of General Counsel, file this Complaint and allege as follows:

## NATURE OF THIS ACTION

1.     This is a civil action brought pursuant to Section 3008(a) and (g) of the Resource Conservation and Recovery Act (RCRA), 42 United States Code (U.S.C.) § 6928(a) and (g), and pursuant to the Florida Resource Recovery and Management Act, specifically § 403.727, Florida Statutes (F.S.), against CF Industries, Inc. (CFI or Defendant). The United States and FDEP seek injunctive relief and the assessment of civil penalties for environmental violations at CFI's Plant City phosphate complex in Hillsborough County, Florida (Facility).

2.      As set forth below, Defendant has violated the statutory and regulatory

requirements applicable to the management and disposal of solid and/or hazardous waste,

found at Sections 3004 and 3005 of RCRA, 42 U.S.C. §§ 6924, 6925, and the regulations

promulgated thereunder, including 40 C.F.R. Parts 261, 262, 264, 265, 268 and 270, and

§§ 403.721 and 403.722, F.S., the Florida Resource Recovery and Management Act, and

the regulations promulgated thereunder, including Chapter 62-730, Florida

Administrative Code (F.A.C.)

## PARTIES

3.      Plaintiffs are the United States of America and FDEP.

4.      Defendant CFI is incorporated in the State of Delaware, and is licensed to do

business in Florida.

5.      CFI is, and at all times relevant to this lawsuit has been, the owner and operator of

the Facility.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the parties and the subject matter of this action

pursuant to RCRA Section 3008(a), 42 U.S.C. § 6928(a), and 28 U.S.C.

§§ 1331 (federal question jurisdiction), 1332 (diversity), 1345 (jurisdiction when the

United States is a plaintiff), 1355 (jurisdiction over penalties arising under federal

claims), and 1367 (supplemental jurisdiction).

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and

1395(a), and RCRA Section 3008(a)(1), 42 U.S.C. § 6928(a)(1), because Defendant is

located and is doing business in this District and the violations occurred in this District.

8.      Authority to bring this civil action is vested in the Attorney General of the United States and the Administrator of EPA pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and 28 U.S.C. §§ 516 and 519.

9.      Authority to bring this civil action is vested in FDEP pursuant to §§ 20.255, 403.121, 403.131, 403.727, and 403.805, F.S.

10.     The United States has provided notice to the State of Florida prior to the commencement of this action in accordance with RCRA Section 3008(a)(2), 42 U.S.C. § 6928(a)(2).

## STATUTORY AND REGULATORY BACKGROUND

11.     Federal regulation of hazardous waste is primarily based on RCRA, enacted on October 21, 1976 to amend the Solid Waste Disposal Act, and on the Hazardous and Solid Waste Amendments (HSWA) enacted by Congress in 1984 to further amend the Solid Waste Disposal Act.  RCRA establishes a "cradle-to-grave" program to be administered by the Administrator of EPA and authorized states for regulating the generation, transportation, treatment, storage, and disposal of hazardous waste.  See 42 U.S.C. § 6901 *et seq*.

12.     RCRA's Subchapter III (RCRA §§ 3001-3023, 42 U.S.C. §§ 6921-6940, known as "Subtitle C") required EPA to promulgate regulations establishing performance standards applicable to facilities that generate, transport, treat, store, or dispose of hazardous wastes.  Together, RCRA Subtitle C and its implementing regulations, set forth at 40 C.F.R. Parts 260 – 279, comprise EPA's RCRA hazardous waste program.

13.     40 C.F.R. § 261.2 defines a solid waste as any discarded material that is not otherwise excluded under 40 C.F.R. § 261.4(a) or that is not excluded by variance.  A

discarded material is any material which is abandoned, recycled, inherently waste-like, or

a military munition.  Materials are solid waste, as defined in 40 C.F.R. § 261.2, if they

are abandoned by being disposed of, burned or incinerated, or accumulated, stored, or

treated (but not recycled) before, or in lieu of, being abandoned by being disposed of,

burned, or incinerated.

14.     A solid waste is a hazardous waste if it is not excluded from regulation as a

hazardous waste under 40 C.F.R. § 261.4(b) and it exhibits any of the characteristics of

hazardous waste identified in Subpart C of 40 C.F.R. Part 261, or it is listed in subpart D

of 40 C.F.R. Part 261.  Characteristic hazardous wastes are assigned "D" codes in 40

C.F.R. Part 261 Subpart C depending on the specific hazardous characteristic that the

waste exhibits.  A hazardous waste with a pH of less than or equal to 2.0 or greater than

or equal to 12.5 exhibits the characteristic of corrosivity and is assigned the D002

hazardous waste code pursuant to 40 C.F.R. § 261.22.

15.     Certain solid wastes from the extraction, beneficiation, and processing of ores and

minerals to generate a saleable product are excluded from the definition of hazardous

wastes pursuant to 40 C.F.R. § 261.4(b)(7), the "Bevill Exemption."

16.     "Materials that are saleable, either as raw materials to other types of industrial

processes (e.g. chemical manufacturing such as MAP/DAP) or as finished products, are

considered final products." [54 Fed. Reg. 36,620, September 1, 1989].

17.     While the first saleable product for the phosphoric acid industry is typically

clarified 52% to 54% merchant grade acid (MGA), EPA made it clear during the 1990

rule-making that the Bevill exemption can end before MGA if intermediate mineral

products are used as feedstocks to other industrial processes, such as MAP and DAP

production [*Id.*]

18.    For a mineral processing waste to be excluded under the Bevill Exemption, it

must fall into one of the twenty specific categories of excluded wastes listed at 40 C.F.R.

§ 261.4(b)(7)(ii).

19.    The Bevill Exemption applies to two and only two wastes generated from

phosphoric acid mineral processing operations: "(p)hosphogypsum from phosphoric acid

production," 40 C.F.R. § 261.4(b)(7)(ii)(D); and "process wastewater from phosphoric

acid production" operations through concentration to merchant grade acid (MGA),

(mineral processing).   40 C.F.R. § 261.4(b)(7)(ii)(P).

20.    Chemical manufacturing wastes, cleaning wastes, scrubber wastes, and wastes

generated after the first saleable product are not "process wastewater from phosphoric

acid production" and do not qualify for the Bevill Exemption.

21.    When Bevill-exempt phosphogypsum and process wastewater from phosphoric

acid production are mixed with hazardous non-exempt wastes, if the resulting mixture

continues to exhibit a hazardous characteristic of the non-exempt waste, then the entire

mixture is a hazardous waste pursuant to the Bevill Mixture Rule, promulgated at 40

C.F.R. § 261.3(a)(2)(i).

22.    In addition, if a Bevill-exempt waste is mixed with a listed waste, the resultant

mixture is a hazardous listed waste pursuant to 40 C.F.R. § 261.3(a)(2)(iv).

23.    RCRA Section 3006, 42 U.S.C. § 6926, allows the Administrator to authorize a

state to administer its own hazardous waste program in lieu of the federal program when

the Administrator deems the state program to be equivalent to and consistent with the federal program.

24.     Pursuant to Section 3006(b) of RCRA, 42 U.S.C. § 6926(b), the state of Florida was granted final authorization by EPA to administer and enforce a hazardous waste program on February 12, 1985; on November 17, 2000, FDEP was authorized to implement a corrective action program under the Hazardous and Solid Waste Amendments of 1984 (HSWA). Part IV, Resource Recovery and Management, of Chapter 403, F.S., provides statutory authority for the state regulatory program as implemented in Chapter 62-730, F.A.C. "Hazardous Waste," including the regulations that are part of the authorized state program. FDEP is the State agency designated to implement the authorized RCRA program in Florida.

25.     Pursuant to its authority under Subtitle C of RCRA, 42 U.S.C. § 6922(a), EPA has promulgated regulations applicable to solid and hazardous waste generators at 40 C.F.R. Parts 261 and 262; to owner/operators of hazardous waste facilities at 40 C.F.R. Parts 264 and 265; and to land disposal of solid and hazardous waste at 40 C.F.R. Part 268. FDEP, like EPA, has promulgated regulations applicable to these persons and practices, which are found at Chapter 62-730, F.A.C. Unless specified otherwise, FDEP has incorporated by reference all federal regulations cited in this Complaint.

26.     EPA's and FDEP's regulations (as relevant to this lawsuit) require that generators of solid waste and hazardous waste must, among other things:

          a. determine whether generated solid wastes are hazardous, 40 C.F.R.

          § 262.11 and Rule 62-730.160, F.A.C.;

b.  keep records of hazardous waste determinations, 40 C.F.R. § 262.40(c)
and Rule 62-730.160, F.A.C.;

c.  treat, store, and dispose of hazardous waste in compliance with a permit
and other applicable regulatory requirements, or, if they qualify for interim
status, with interim status requirements, including obtaining financial
assurance where applicable, 42 U.S.C. § 6925 and § 403.722. F.S.;

d.  meet certain requirements for waste treatment prior to placement or
disposal of hazardous waste on the land, 40 C.F.R. Part 268 and Rule 62-
730.183, F.A.C.

27.     Pursuant to Sections 3008(a) and (g) and 3006(g) of RCRA, 42 U.S.C.
§§ 6928(a) and (g) and 6926(g), the United States may enforce the federally-approved
Florida hazardous waste program, as well as the federal regulations that remain effective
in Florida, by filing a civil action in United States District Court seeking civil penalties
not to exceed $25,000 per day per violation, and injunctive relief.

28.     Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28
U.S.C. § 2471, as amended by 31 U.S.C. § 3701, and as provided in 40 C.F.R. Part 19,
the amount specified in the foregoing Paragraph increases to $27,500 per day for each
violation occurring on and after January 31, 1997, further increases to $32,500 per day
for each violation occurring on or after March 15, 2004 and further increases to $37,500
per day for each violation occurring after January 12, 2009.  Each day of such violation
constitutes a separate violation pursuant to Section 3008(g) of RCRA, 42 U.S.C.
§ 6928(g).

29.    Pursuant to § 403.727, F.S., FDEP is authorized to enforce its hazardous waste regulations and to seek judicial imposition of penalties of up to $50,000 per day for each violation.

## GENERAL ALLEGATIONS

### *FACILITY AND PROCESS DESCRIPTION*

30.    The Facility has been in operation at the current approximate 3,300-acre site since 1965.  CFI purchased Central Phosphates, Inc., the then-owner of the Facility in 1971, and merged Central Phosphates, Inc. into CFI in 1989.  The Facility is located approximately 5 miles south of Zephyrhills, Florida and 10 miles north of Plant City, Florida.

31.    CFI manufactures annually 1.2 million tons of dry ammonium phosphate fertilizer products commonly known as monoammonium phosphate (MAP) and diammonium phosphate (DAP) through the mineral processing and chemical manufacturing methods described in Paragraphs 32, 34, 37-38, below.

32.    At CFI, sulfuric acid is reacted with mineral phosphate rock to produce phosphoric acid (mineral processing).  Different concentrations of phosphoric acid are then reacted with ammonia to produce MAP or DAP (chemical manufacturing).

33.    Operations at CFI fall into several categories, only some of which are mineral processing.

Sulfuric Acid Production

34.    The manufacturing of MAP or DAP at CFI begins with the production of sulfuric acid.  CFI produces sulfuric acid in four (4) Sulfuric Acid Plants on-site (designated as

Sulfuric Acid Plants A, B, C, and D)  The sulfuric acid is stored in large tanks until piped

to the Phosphoric Acid Plants for use.

35.      Wastes generated from the Sulfuric Acid Plants include: spent tower packing

materials known as "ceramic saddles," scale from the "fire tube boilers," and wastewater

from the cleaning of sulfuric acid storage tanks, pipes and process equipment.  CFI

disposes of the ceramic saddles and scale from the fire tube boilers on the

phosphogypsum storage stack ("gypsum stack").  CFI places the hazardous cleaning

wastewater in a ditch at the Sulfuric Acid Plant for pH adjustment and then discharges

the wastewater to the phosphogypsum stack system (see Paragraph 37, below).

36.      Sulfuric acid manufacturing and storage is not mineral processing and is not

subject to the Bevill Exemption.

Phosphoric Acid Production

37.      Sulfuric acid is piped from the storage tanks in the Sulfuric Acid Plants to reactors

in the two Phosphoric Acid Plants on-site (designated as Phosphoric Acid Plant A and

Phosphoric Acid Plant B).  In the reactors, the sulfuric acid is mixed with phosphate rock

to produce weak phosphoric acid [approximately 26% phosphorus pentoxide ($P_2O_5$)

(hereafter referred to as weak phosphoric acid)].  A by-product of the reaction is calcium

sulfate dihydrate, typically referred to as gypsum.  Gypsum is separated from the weak

phosphoric acid by filtration.  To recover additional weak phosphoric acid, the filtered

gypsum is rinsed three (3) times with process water pumped from the lined ponds and

ditches circling the gypsum stack ("phosphogypsum stack system," as described in

Paragraphs 51-52, below).  After the third rinse with process water, minimal additional

phosphoric acid is recoverable from the gypsum, so the rinsed gypsum is mixed with water (slurried) and pumped to the gypsum stack for disposal.

38.     To meet material specifications for phosphate fertilizer production, CFI must concentrate the 26% phosphoric acid in two stages.  The first concentration step is achieved through evaporation, resulting in 40% phosphoric acid.  The 40% acid is then further concentrated through another evaporation step to 54% phosphoric acid.  A combination of the 26% phosphoric acid and the 54% phosphoric acid is used in the MAP/DAP production process described below.

39.     Production processes leading to the manufacture of 54% phosphoric acid are mineral processing.

40.     Contaminants are accumulated in the water used throughout production of 54% phosphoric acid, resulting in aqueous wastes referred to as "process wastewater."  Prior to reuse in the various processes, the process wastewater must be cooled and contaminants must be removed.  A majority of the contaminants precipitate (settle) from the water as it cools in the phosphogypsum stack system.  Approximately 20,000-30,000 gallons per minute (gpm) of process wastewater is sent from each phosphoric acid production plant to the phosphogypsum stack system for cooling and contaminant settling.

Fertilizer Production

41.     MAP and DAP fertilizer products are manufactured at the facility in four (4) Plants ("trains") designated as A, X, Y, and Z.  Each train consists of a reactor, granulator, dryer, product cooler, mills, aging belts, and screens.

42.     MAP and DAP production consists of reacting a mixture of 26% phosphoric acid and 54% phosphoric acid with anhydrous ammonia in a "preneutralizer" reactor. The resultant slurry is removed from the preneutralizer and pumped into a rotating drum granulator, where the product forms into round, solid, pebble-like granules. This solid material then passes through a dryer followed by a system of sizing screens and mills to achieve the desired granule size. The product is then cooled and stored. It is shipped offsite as bulk granular fertilizer for blending and use on farm crops.

43.     MAP and DAP fertilizer production operations are chemical manufacturing, not mineral processing.

<u>Air Pollution Control Devices and Wastes</u>

44.     Air particulates emitted from the phosphoric acid production process are captured ("scrubbed") from the reactors, filters, and other production equipment (i.e. clarifiers and storage tanks) using air pollution control devices commonly referred to as "scrubbers." The scrubbing liquid for each of these scrubbers is process wastewater that is pumped from the phosphogypsum stack system through the scrubbers to collect particulate air emissions in a single pass through the scrubber before being discharged directly back into the gypsum stack system.

45.     Most of the ammonia and fugitive air particulates emitted from the preneutralizer, granulator, dryer, etc., during MAP/DAP production are captured in a series of air pollution control devices similar to the phosphoric acid scrubbers described above. CFI also uses wastewater from the phosphogypsum stack system in the scrubbers in the MAP/DAP trains to collect particulate air emissions. The scrubber effluent is discharged directly back into the phosphogypsum stack system.

46.     The operation of air pollution control devices is not part of mineral processing, and the wastewater from such scrubbers is not subject to the Bevill Exemption.

Pipe and Tank Cleaning

47.     CFI cleans its pipes, tanks, evaporators, and other process equipment throughout the entire facility on a regular basis, using a mixture of sulfuric acid and water or process wastewater as the cleaning agent. After use, the spent cleaning agent is discharged to the phosphogypsum stack system. Cleaning wastes are generated on a daily basis during normal plant operations and during scheduled maintenance periods.

48.     Pipe and tank cleaning operations are not part of mineral processing, and the wastewater from such cleaning operations is not subject to the Bevill Exemption.

Spills and Leaks of Sulfuric Acid and Phosphoric Acid

49.     In phosphoric acid and fertilizer production, spills and leaks of phosphoric acid and sulfuric acid occur. These spills and leaks commingle with process wastewater being transported from the production areas to the phosphogypsum stack system.

50.     Spills and leaks of sulfuric acid and phosphoric acid are not part of mineral processing, and are therefore not subject to the Bevill Exemption.

51.     As described above, CFI currently disposes of slurried gypsum in a 197-acre phosphogypsum stack expansion lined with 60-mil high density polyethylene (HDPE). The gypsum stack expansion is located south of the closed 410-acre gypsum stack. CFI also disposes of slurried gypsum in a 111-acre vertical expansion stack lined with 60-mil HDPE. The 111-acre vertical expansion is located between the closed 410-acre gypsum stack and the 197-acre expansion stack. The two lined gypsum disposal areas provide a

combined 308-acre lined gypsum stack base.  CFI operates the gypsum stack under a permit issued by FDEP (Permit Number IWFP #000078-009).

52.     The combined lined expansion area described above operates in conjunction with the existing phosphogypsum stack system that is entirely lined with 60-mil HDPE.  The lined phosphogypsum stack system consists of an 80-acre main cooling pond located directly east of the production complex, a 13-acre lined emergency holding pond, and the ponds' connecting ditches.  CFI operates the pond system under an Industrial Wastewater Facility Permit Number 0000078-009 issued by FDEP.

53.     CFI's entire site is encompassed by a comprehensive groundwater monitoring system that is monitored and operated in accordance with an approved groundwater monitoring plan under the State-issued Industrial Wastewater Facility Permit Number 0000078-009.  The groundwater monitoring program began in 1983, and in 1987, CFI entered into a consent order with FDEP (then Florida Department of Environmental Regulation) to address contamination resulting from the historic operation of an unlined phosphogypsum stack system.  In 1992, CFI completed a Contamination Assessment and Risk Assessment that delineated the extent of contamination and risk to human health and the environment.  As a result of the contamination assessment, CFI developed a Remedial Action Plan to close the unlined phosphogypsum stack and remediate groundwater impacts.  In 1999, CFI completed construction of the lined phosphogypsum stack system described in Paragraphs 50-51, above.

54.     In 1998, Florida enacted § 403.4155, F.S., which requires FDEP to promulgate rules related to closure and financial responsibility for phosphogypsum stacks.  Rules were duly promulgated in Chapter 62-673, F.A.C.  As a result, CFI is required to

annually estimate the cost for closing the phosphogypsum stack system (including water

treatment and management costs) at the end of the useful life of the facility and the cost

associated with long-term monitoring of the effectiveness of closure.  Based on the

estimated cost for closure and long-term care, CFI is required to establish Financial

Assurance to guarantee that funds are available to close the facility at the end of the

useful life.  To meet its Financial Assurance and other obligations under Chapter 62-673,

F.A.C., CFI has developed a closure plan, provided FDEP with closure and post-closure

cost estimates and established a trust fund to address closure and post-closure of the

phosphogypsum stack system on a schedule consistent with those FDEP rules.

### *RCRA ALLEGATIONS*

55.     Defendant CFI Industries, Inc. is a "person" within the meaning of Section

1004(15) of RCRA, 42 U.S.C. § 6903(15), which includes corporations; and within the

meaning of § 403.703(22), F.S.

56.     Since 1976, Defendant has owned, and/or operated, and continues to own and/or

operate a "solid waste management facility" within the meaning of Section 1004(29) of

RCRA, 42 U.S.C. § 6903(29), and § 403.703(35), F.S.

57.     On December 14-15, 2004, EPA conducted an inspection and on January 11-12,

2005, EPA conducted an inspection and sampling event at the Facility to determine the

Facility's compliance with applicable State and Federal RCRA requirements.

58.     At CFI, the waste phosphogypsum is slurried with process wastewater and sent to

the gypsum stack.

59.     CFI also disposes of other solids and wastewaters generated from MAP/DAP

production, air pollution control devices, and the cleaning of pipes, tank, and other

process equipment in the Sulfuric Acid Plant, Phosphoric Acid Plants and MAP/DAP

plants, in the phosphogypsum stack system.

60.     Defendant's placement of the wastes described in the prior two Paragraphs on the

gypsum stacks is placement on the land and constitutes disposal within the meaning of

RCRA and corresponding state law, and these materials are, therefore, solid wastes.

61.     During the January 2005 inspection, EPA sampled, among other things, scrubber

effluents in the MAP/DAP Plants, and cleaning wastes generated from pipe and tank

cleanouts in the Phosphoric Acid Plants and the Sulfuric Acid Plants.  The samples were

analyzed and the results showed that the waste streams exhibited the hazardous

characteristic of corrosivity (RCRA hazardous waste code D002) pursuant to Subpart C

of 40 C.F.R. Part 261, and therefore the wastes are hazardous wastes.

62.     The phosphogypsum generated at CFI meets the definition of "(p)hosphogypsum

from phosphoric acid production" at 40 C.F.R.  § 261.4(b)(7)(ii)(D) and is therefore a

Bevill-exempt waste.  Wastewaters generated from processes that produce 54%

phosphoric acid are also Bevill-exempt pursuant to 40 C.F.R. § 261.4(b)(7)(ii)(P).

63.     Wastewaters generated at CFI from processes associated with MAP/DAP

production (chemical manufacturing), air pollution control scrubbers, and pipe, tank, or

other process equipment cleaning and maintenance, are not Bevill-exempt wastewaters.

These wastes at CFI exhibit a hazardous characteristic pursuant to Subpart C of 40 C.F.R.

Part 261, and therefore are hazardous wastes.

## CLAIMS FOR RELIEF

*First Claim for Relief*
*(Failure to Make Hazardous Waste Determinations)*

64.     The allegations in Paragraphs 1 through 63 are realleged and incorporated herein by reference.

65.     40 C.F.R. § 262.11 and Chapter 62-730, F.A.C., require, among other things, that a person who generates a solid waste must determine if that waste is a hazardous waste.

66.     At the time of the December 2004 and January 2005 inspections and sampling event, Defendant had routinely generated the following solid wastes for which hazardous waste determinations had not been made:

      a.     Phosphoric acid plants scrubber effluent;

      b.     X DAP/MAP train reactor secondary scrubber effluent;

      c.     X DAP/MAP train dryer secondary scrubber effluent;

      d.     X DAP/MAP train cooler secondary scrubber effluent;

      e.     Y DAP/MAP train reactor secondary scrubber effluent;

      f.     Y DAP/MAP train dryer secondary scrubber effluent;

      g.     Y DAP/MAP train cooler secondary scrubber effluent;

      h.     Z DAP/MAP train reactor secondary scrubber effluent;

      i.     Z DAP/MAP train dryer secondary scrubber effluent;

      j.     Z DAP/MAP train cooler secondary scrubber effluent;

      k.     Spent sulfuric acid and wastewaters used for flushing the phosphoric acid production pipes and equipment;

      l.     Wastewaters from cleaning tanks, production pipes and equipment in the Sulfuric Acid Plants;

m.     Wastewaters from cleaning tanks, production pipes and equipment in the DAP/MAP plants; and

n.     Spills and leaks of sulfuric acid and phosphoric acid in the phosphoric acid and DAP/MAP production areas.

67.     EPA, based on facility knowledge and the December 2004 and January 2005 inspections and sampling events, determined the following solid wastes are hazardous:

a.     Phosphoric acid plants scrubber effluent is a D002 (corrosive) hazardous waste;

b.     X DAP/MAP train reactor secondary scrubber effluent is a D002 (corrosive) hazardous waste;

c.     X DAP/MAP train dryer secondary scrubber effluent is a D002 (corrosive) hazardous waste;

d.     X DAP/MAP train cooler secondary scrubber effluent is a D002 (corrosive) hazardous waste;

e.     Y DAP/MAP train reactor secondary scrubber effluent is a D002 (corrosive) hazardous waste;

f.     Y DAP/MAP train dryer secondary scrubber effluent is a D002 (corrosive) hazardous waste;

g.     Y DAP/MAP train cooler secondary scrubber effluent is a D002 (corrosive) hazardous waste;

h.     Z DAP/MAP train reactor secondary scrubber effluent is a D002 (corrosive) hazardous waste;

i.      Z DAP/MAP train dryer secondary scrubber effluent is a D002 (corrosive) hazardous waste;

j.      Z DAP/MAP train cooler secondary scrubber effluent is a D002 (corrosive) hazardous waste;

k.      Spent sulfuric acid and wastewaters used for flushing the phosphoric acid production pipes and equipment are D002 (corrosive) hazardous waste;

l.      Wastewaters from cleaning tanks, production pipes and equipment in the Sulfuric Acid Plants are D002 (corrosive) hazardous waste;

m.      Wastewaters from cleaning tanks, production pipes and equipment in the MAP/DAP plants are D002 (corrosive) hazardous waste; and

n.      Spills and leaks of sulfuric acid and phosphoric acid in the phosphoric acid and DAP/MAP production areas are D002 (corrosive) hazardous waste.

68.     Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S., for each such failure to make a hazardous waste determination as required by 40 C.F.R. § 262.11 and Chapter 62-730, F.A.C.

## *Second Claim for Relief*
*(Treatment, Storage and Disposal of Hazardous Waste in Ditches at the Sulfuric Acid Plant and the Phosphogypsum Stack System without a Permit or Interim Status, in violation of Section 3005 of RCRA, and the applicable regulatory requirements found at 40 C.F.R. Part 264, Subparts A-G, K, and CC, and Chapter 62-730, F.A.C.)*

69.     The allegations in Paragraphs 1 through 68 are realleged and incorporated herein by reference.

70.     RCRA Section 3005(a), 42 U.S.C. § 6925(a) and § 403.722, F.S., require, among other things, that the owner and operator of a hazardous waste management unit must have a permit [or interim status, per RCRA Section 3005(a)] for the treatment, storage and/or disposal of any hazardous waste during the active life of the unit.

71.     Since at least 2004 and continuing through to at least September 2009, Defendant has routinely treated, stored and disposed of the following hazardous wastes in the Facility's phosphogypsum stack system:

    a.      Phosphoric acid plants scrubber effluent, a D002 (corrosive) hazardous waste;

    b.      X DAP/MAP train reactor secondary scrubber effluent, a D002 (corrosive) hazardous waste;

    c.      X DAP/MAP train dryer secondary scrubber effluent, a D002 (corrosive) hazardous waste;

    d.      X DAP/MAP train cooler secondary scrubber effluent, a D002 (corrosive) hazardous waste;

    e.      Y DAP/MAP train reactor secondary scrubber effluent, a D002 (corrosive) hazardous waste;

    f.      Y DAP/MAP train dryer secondary scrubber effluent, a D002 (corrosive) hazardous waste;

    g.      Y DAP/MAP train cooler secondary scrubber effluent, a D002 (corrosive) hazardous waste;

    h.      Z DAP/MAP train reactor secondary scrubber effluent, a D002 (corrosive) hazardous waste;

    i.     Z DAP/MAP train dryer secondary scrubber effluent, a D002 (corrosive) hazardous waste;

    j.     Z DAP/MAP train cooler secondary scrubber effluent, a D002 (corrosive) hazardous waste;

    k.    Spent sulfuric acid and wastewaters used for flushing the phosphoric acid production pipes and equipment, D002 (corrosive) hazardous waste;

    l.     Wastewaters from cleaning tanks, production pipes and equipment in the MAP/DAP plants, D002 (corrosive) hazardous waste; and

    m.   Spills and leaks of sulfuric acid and phosphoric acid in the phosphoric acid and DAP/MAP production areas, D002 (corrosive) hazardous wastes.

72.    Defendant since at least 2004 has disposed of the wastewaters generated from cleaning tanks, production pipes and equipment in the Sulfuric Acid Plants, D002 (corrosive) hazardous waste in the Sulfuric Acid Plant ditches and the phosphogypsum stack system.

73.    40 C.F.R. Part 264 applies to owners and operators of facilities which treat, store, or dispose of hazardous waste.  40 C.F.R. § 264.1(b).

74.    Defendant since at least 2004 has operated its Facility's Sulfuric Acid Plant ditches and its phosphogypsum stack system as hazardous waste management units, i.e., surface impoundments, and is subject to the hazardous waste requirements at 40 C.F.R. Part 264, Subparts A-G, K (Surface Impoundments), CC (Air Emission Standards for Tanks, Surface Impoundments and Containers), and Chapter 62-730, F.A.C..

75.     Defendant has neither a permit nor interim status for treatment, storage or disposal of hazardous waste in the Sulfuric Acid Plant ditches or in the phosphogypsum stack system, in violation of Section 3005 of RCRA, and the applicable regulatory requirements of 40 C.F.R. Part 264, Subparts A-G, K, and CC, and Chapter 62-730, F.A.C.

76.     Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S., for treatment, storage, and disposal of hazardous waste in the Sulfuric Acid Plant ditches and the phosphogypsum stack without a permit or interim status in violation of RCRA Section 3005(a), 42 U.S.C. § 6925(a), and the applicable regulatory requirements of 40 C.F.R. Part 264, Subparts A-G, K, and CC, and Chapter 62-730, F.A.C.

*Third Claim for Relief*
*(Failure to Perform Land Disposal Determination)*

77.     The allegations in Paragraphs 1 through 76 are realleged and incorporated herein by reference.

78.     40 C.F.R. § 268.7(a)(1) and Chapter 62-730, F.A.C. require, among other things, that a generator of hazardous waste must determine if its hazardous waste needs to be treated before it can be land disposed.

79.     Since at least 2004 and continuing through to at least September 2009, Defendant has routinely generated the following hazardous wastes and failed to determine if these wastes needed to be treated before they could be land disposed:

    a.     Phosphoric acid plants scrubber effluent, a D002 (corrosive) hazardous waste;

b.      X DAP/MAP train reactor secondary scrubber effluent, a D002 (corrosive) hazardous waste;

c.      X DAP/MAP train cooler secondary scrubber effluent, a D002 (corrosive) hazardous waste;

d.      Y DAP/MAP train reactor secondary scrubber effluent, a D002 (corrosive) hazardous waste;

e.      Y DAP/MAP train dryer secondary scrubber effluent, a D002 (corrosive) hazardous waste;

f.      Y DAP/MAP train cooler secondary scrubber effluent, a D002 (corrosive) hazardous waste;

g.      Z DAP/MAP train reactor secondary scrubber effluent, a D002 (corrosive) hazardous waste;

h.      Z DAP/MAP train dryer secondary scrubber effluent, a D002 (corrosive) hazardous waste;

i.      Z DAP/MAP train cooler secondary scrubber effluent, a D002 (corrosive) hazardous waste;

j.      Wastewaters from cleaning MAP/DAP plants' tanks, production pipes and equipment, a D002 (corrosive) hazardous waste;

k.      Spent sulfuric acid and wastewaters used for flushing the phosphoric acid production pipes and equipment, a D002 (corrosive) hazardous waste; and

l.     Spills and leaks of sulfuric acid and phosphoric acid in the

phosphoric acid and DAP/MAP production areas, D002 (corrosive)

hazardous wastes

80.     Until at least January 2005, Defendant routinely generated wastewaters from

cleaning tanks, production pipes and equipment in the Sulfuric Acid Plants, D002

(corrosive) hazardous waste and failed to determine if these wastes needed to be treated

before they could be land disposed.

81.     Defendant is liable for injunctive relief and civil penalties pursuant to Section

3008(a) of RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S., for each such failure to

determine if these wastes needed to be treated before they could be land disposed.  Such

failure is in violation of 40 C.F.R. § 268.7(a)(1) and Chapter 62-730, F.A.C.

*Fourth Claim for Relief*
*(Failure to Meet Land Disposal Restrictions for Prohibited Hazardous Wastes)*

82.     The allegations in Paragraphs 1 through 81 are realleged and incorporated herein

by reference.

83.     40 C.F.R. § 268.9(c) and Chapter 62-730, F.A.C. require, among other things, that

a prohibited waste which exhibits a characteristic under 40 C.F.R. Part 261, Subpart C,

may not be land disposed unless the waste complies with the treatment standards under

Subpart D of 40 C.F.R. Part 268 and Chapter 62-730, F.A.C.

84.     40 C.F.R. Part 268, Subpart D, 40 C.F.R. § 268.40(a) and Chapter 62-730, F.A.C.,

require, among other things, that a prohibited waste identified in the table "Treatment

Standards for Hazardous Wastes" may be land disposed only if it meets the requirements

found in the table.  For D002 corrosive wastewaters, the waste must meet the DEACT

code and also meet 40 C.F.R. § 268.48 and Chapter 62-730, F.A.C. standards.

85.     40 C.F.R. Part 268, Subpart D, 40 C.F.R. § 268.48 and Chapter 62-730, F.A.C., the "Universal Treatment Standards" regulations, require, among other things, that prohibited wastewaters must contain no more than 1.4 milligrams per liter (mg/L) of arsenic and no more than 2.77 mg/L of chromium to be land disposed.

86.     Based on the results from the December 2004 inspection and January 2005 sampling investigation, and EPA's knowledge of the composition of CFI's effluent, the following hazardous wastes were being land disposed in the phosphogypsum stack system and did not meet the Universal Treatment Standards for corrosivity, 1.4 mg/L arsenic and 2.77 mg/L chromium given at 40 C.F.R. § 268.48 and Chapter 62-730, F.A.C.:

> a.      Phosphoric acid plants scrubber effluent, a D002 (corrosive) hazardous waste;
>
> b.      X DAP/MAP train reactor secondary scrubber effluent, a D002 (corrosive) hazardous waste;
>
> c.      X DAP/MAP train dryer secondary scrubber effluent, a D002 (corrosive) hazardous waste;
>
> d.      X DAP/MAP train cooler secondary scrubber effluent, a D002 (corrosive) hazardous waste;
>
> e.      Y DAP/MAP train reactor secondary scrubber effluent, a D002 (corrosive) hazardous waste;
>
> f.      Y DAP/MAP train dryer secondary scrubber effluent, a D002 (corrosive) hazardous waste;

g.　　Y DAP/MAP train cooler secondary scrubber effluent, a D002 (corrosive) hazardous waste;

h.　　Z DAP/MAP train reactor secondary scrubber effluent, a D002 (corrosive) hazardous waste;

i.　　Z DAP/MAP train dryer secondary scrubber effluent, a D002 (corrosive) hazardous waste;

j.　　Z DAP/MAP train cooler secondary scrubber effluent, a D002 (corrosive) hazardous waste;

k.　　Spent sulfuric acid and wastewaters used for flushing the phosphoric acid production pipes and equipment, a D002 (corrosive) hazardous waste;

l.　　Wastewaters from cleaning tanks, production pipes and equipment in the MAP/DAP plants, a D002 (corrosive) hazardous waste; and

m.　　Spills and leaks of sulfuric acid and phosphoric acid in the phosphoric acid and DAP/MAP production areas, D002 (corrosive) hazardous wastes.

87.　　Based on EPA's knowledge of the composition of CFI's effluent, the wastewaters from cleaning tanks, production pipes and equipment in the Sulfuric Acid Plants, a D002 (corrosive) hazardous waste, were being land disposed in the Sulfuric Acid Plant ditches and phosphogypsum stack system without meeting the Universal Treatment Standards for D002 waste provided at 40 C.F.R. § 268.48 and Chapter 62-730, F.A.C.

88.　　Since at least 2004 and continuing through to at least September 2009, Defendant has routinely disposed of hazardous waste identified in Paragraphs 86 and 87, above,

which is prohibited from land disposal pursuant to 40 C.F.R. §§ 268.9(c), 268.40(a), and

268.48 and Chapter 62-730, F.A.C., (hereinafter "prohibited waste"), in the Facility's

Sulfuric Acid Plant ditches and the phosphogypsum stack system.

89.     Defendant is liable for injunctive relief and civil penalties pursuant to Section

3008(a) of RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S., for failure to meet the

standards set forth at 40 C.F.R. §§ 268.40(a), and 268.48 and Chapter 62-730, F.A.C.

prior to land disposing prohibited waste in the phosphogypsum stack system.  Such

failure is in violation of 40 C.F.R. §§ 268.9(c), 268.40(a), and 268.48 and Chapter 62-

730, F.A.C.

*Fifth Claim for Relief*
*(Failure to Keep Records of Hazardous Waste Determinations)*

90.     The allegations in Paragraphs 1 through 89 are realleged and incorporated herein

by reference.

91.     40 C.F.R. § 262.40 and Chapter 62-730, F.A.C. require generators to keep records

of hazardous waste determinations for at least three years.

92.     During routine maintenance at the Sulfuric Acid Plants, Defendant generates

wastes from, among other activities, descaling the fire tube boilers, replacement of spent

tower packing ("ceramic saddles"), and rinsing sulfuric acid storage tanks with water.

93.     If corrosive, the sulfuric acid tank wastewaters were required to be neutralized

before eventual discharge to the phosphogypsum stack system.

94.     At the time of the December 2004 and January 2005 inspections, Defendant could

not produce any documentation relating to hazardous waste determinations made on any

of the solid wastes discussed in Paragraph 92 from the Sulfuric Acid Plants as required

by 40 C.F.R. § 262.40(c) and Chapter 62-730, F.A.C.

95.     Defendant is liable for injunctive relief and civil penalties pursuant to Section

3008(a) of RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S., for failure to keep records of

hazardous waste determinations.  Such failure is a violation of 40 C.F.R.

§ 262.40(c) and Chapter 62-730, F.A.C.

*Sixth Claim for Relief*
*(Failure to Establish Cost Estimate for Closure)*

96.     The allegations in Paragraphs 1 through 95 are realleged and incorporated

herein by reference.

97.     Owners and operators of treatment, storage and disposal facilities are required

by 40 C.F.R. § 264.140(a) and Chapter 62-730, F.A.C. to meet the requirements of 40

C.F.R. § 264.142 and Chapter 62-730, F.A.C. (Cost Estimate for Closure).

98.     40 C.F.R. § 264.142(a) and Chapter 62-730, F.A.C., require that the owner or

operator must have a detailed written estimate, in current dollars, of the cost of closing

the facility in accordance with the requirements in 40 C.F.R. §§ 264.111 through

264.115, and applicable closure requirements in 40 C.F.R. § 264.197 for hazardous waste

tanks and 40 C.F.R. § 264.228 for hazardous waste surface impoundments.

99.     At the time of the 2004 and 2005 inspections, Defendant did not have a detailed

written estimate, in current dollars, of the cost of closing the facility in accordance with

the requirements in 40 C.F.R. §§ 264.111 through 264.115, applicable closure

requirements in 40 C.F.R. § 264.197 and 40 C.F.R. § 264.228, and Chapter 62-730,

F.A.C.

100.    Defendant is liable for injunctive relief and civil penalties pursuant to Section

3008(a) of RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S., for failure to establish a cost

estimate for closure.  Such failure is in violation of 40 C.F.R. § 264.142(a) and Chapter

62-730, F.A.C.

### Seventh Claim for Relief
*(Failure to Establish Adequate Financial Assurance for Closure)*

101.    The allegations in Paragraphs 1 through 100 are realleged and incorporated

herein by reference.

102.    Owners and operators of treatment, storage and disposal facilities are required

by 40 C.F.R. § 264.140(a) and Chapter 62-730, F.A.C., to meet the requirements of 40

C.F.R. § 264.143 and Rule 62-730.226, F.A.C. (Financial Assurance for Closure).

103.    40 C.F.R. § 264.143(a) and Chapter 62-730, F.A.C.  require that the owner or

operator of each facility must establish financial assurance for closure of the facility, and

must choose from the options as specified in paragraphs (a) through (f) of 40 C.F.R.

§ 264.143.

104.    At the time of the 2004 and 2005 inspections, Defendant had not established

adequate financial assurance for closure of the facility using any of the options specified

in paragraphs (a) through (f) of 40 C.F.R. § 264.143 and Chapter 62-730, F.A.C.

105.    Defendant is liable for injunctive relief and civil penalties pursuant to Section

3008(a) of RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S., for failure to establish

adequate financial assurance for closure.  Such failure is in violation of 40 C.F.R.

§ 264.143 and Chapter 62-730, F.A.C.

### Eighth Claim for Relief
*(Failure to Establish Adequate Cost Estimate for Post-Closure)*

106.    The allegations in Paragraphs 1 through 105 are realleged and incorporated

herein by reference.

107.     Owners and operators of disposal facilities, piles, surface impoundments, tanks systems and containment buildings are required, as specified  by 40 C.F.R. § 264.140(b) and Chapter 62-730, F.A.C.,  to meet the requirements of 40 C.F.R. § 264.144 and Rule 62-730.226, F.A.C. (Cost Estimate for Post-Closure care).

108.     40 C.F.R. § 264.144(a) and Chapter 62-730, F.A.C.  state that any owner or operator of a disposal surface impoundment under 40 C.F.R. § 264.228 required to prepare a contingent closure and post-closure plan must have a detailed written estimate, in current dollars, of the annual cost of post-closure monitoring and maintenance of the facility in accordance with the applicable post-closure regulations in 40 C.F.R. §§ 264.117 through 264.120, and 40 C.F.R. § 264.228.

109.     At the time of the 2004 and 2005 inspections, Defendant did not have a detailed written estimate, in current dollars, of the annual cost of post-closure monitoring and maintenance of the facility in accordance with the applicable post-closure regulations in 40 C.F.R. §§ 264.117 through 264.120, 40 C.F.R. § 264.228 and Rule 62-730.226, F.A.C.

110.     Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S., for failure to establish cost estimate for post-closure.  Such failure is in violation of 40 C.F.R. § 264.144 and Chapter 62-730, F.A.C.

### *Ninth Claim for Relief*
*(Failure to Establish Adequate Financial Assurance for Post-Closure)*

111.     The allegations in Paragraphs 1 through 110 are realleged and incorporated herein by reference.

112.     Owners and operators of disposal facilities, piles, surface impoundments, tanks systems and containment buildings are required, as specified by 40 C.F.R. § 264.140(b) and Chapter 62-730, F.A.C. to meet the requirements of 40 C.F.R. § 264.145 and Rule 62-730.226, F.A.C. (Financial Assurance for Post-Closure Care).

113.     40 C.F.R. § 264.145(a) and Chapter 62-730, F.A.C. require that the owner or operator of a hazardous waste management unit subject to the requirements of 40 C.F.R. § 264.144 must establish financial assurance for post-closure care in accordance with the approved post-closure plan for the facility 60 days prior to the initial receipt of hazardous waste or the effective date of the regulation, whichever is later.

114.     At the time of the 2004 and 2005 inspections, Defendant was subject to the requirements of 40 C.F.R. § 264.144 and Chapter 62-730, F.A.C. and had not established adequate financial assurance for post-closure care.

115.     Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S., for failure to establish adequate financial assurance for post-closure.  Such failure was in violation of 40 C.F.R. § 264.145 and Rule 62-730.226, F.A.C.

*Tenth Claim for Relief*
*(Failure to Establish Adequate Financial Assurance for Third Party Liability)*

116.     The allegations in Paragraphs 1 through 115 are realleged and incorporated herein by reference.

117.     Owners and operators of treatment, storage and disposal facilities are required by 40 C.F.R. § 264.140(a) and Chapter 62-730, F.A.C., to meet the requirements of 40 C.F.R. § 264.147(a) and Rule 62-730.226, F.A.C. (Liability Requirements).

118.     40 C.F.R. § 264.147(a) and Chapter 62-730, F.A.C.  require that the owner or operator of each treatment, storage and disposal facility must establish financial assurance for bodily injury and property damage to third parties caused by sudden accidental occurrences arising from operations of the facility, and must choose from the options as specified in paragraphs (a) (1) through (6) of 40 C.F.R. § 264.147.

119.     Owners and operators of surface impoundments, landfills, land treatment facilities, or hazardous waste disposal miscellaneous units are required by 40 C.F.R. § 264.140(a) and Chapter 62-730, F.A.C., to meet the requirements of 40 C.F.R. § 264.147(b) and Rule 62-730.226, F.A.C. (Liability Requirements).

120.     40 C.F.R. § 264.147(b) and Chapter 62-730, F.A.C.  require that the owner or operator of each surface impoundment, landfill, land treatment facility, or hazardous waste disposal miscellaneous unit must establish financial assurance for bodily injury and property damage to third parties caused by non-sudden accidental occurrences arising from operations of the facility, and must choose from the options as specified in paragraphs (b) (1) through (6) of 40 C.F.R. § 264.147.

121.     Pursuant to C.F.R. § 264.147(b) and Chapter 62-730, F.A.C., owners and operators who are subject to 40 C.F.R. § 264.147(b) may combine coverage for sudden and non-sudden accidental occurrences.

122.     At the time of the 2004 and 2005 inspections, Defendant had not established adequate financial assurance for third party liability for sudden or non-sudden accidental occurrences using any of the options specified in paragraphs (a)(1) through (6) or (b)(1) through (6) of 40 C.F.R. § 264.147 and Chapter 62-730, F.A.C.

123.    Defendant is liable for injunctive relief and civil penalties pursuant to Section

3008(a) of RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S., for failure to establish

adequate financial assurance for third party liability.  Such failure is in violation of 40

C.F.R. § 264.147 and Chapter 62-730, F.A.C.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, the United States and the Florida Department of

Environmental Protection, respectfully request that this Court:

1.    Order the Defendant to immediately comply with the statutory and

regulatory requirements cited in this Complaint;

2.    Assess civil penalties against the Defendant for up to the amounts

provided pursuant to Sections 3008(a) and 3008(g) of RCRA, 42 U.S.C. §§ 6928(a) and

6928(g); Section 403.727, F.S; and 28 U.S.C. § 2471, as amended by 31 U.S.C. § 3701;

and

3.    Grant the United States and the Florida Department of Environmental

Protection such other relief as this Court deems just and proper.

FOR THE UNITED STATES:

Respectfully Submitted,


Robert G. Dreher
Acting Assistant Attorney General
Environmental Enforcement Section
Environment & Natural Resources Division


DEBORAH M. REYHER
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
District of Columbia Bar No. **[INSERT BAR NO]**
Post Office Box 7611
Ben Franklin Station
Washington, DC 20044
202.514.4113
202.514.0097 (Fax)

A. BRIAN ALBRITTON
United States Attorney

By:

KENNETH STEGEBY
Assistant United States Attorney
USAO No. 112
400 N. Tampa Street, Suite 3200
Tampa, FL 33602
Phone: (813) 274-6303
Facsimile : (813) 274-6198
Email:  Kenneth.stegeby@usdoj.gov


OF COUNSEL:

JOAN REDLEAF DURBIN
Associate Regional Counsel
Office of Environmental Accountability
United States Environmental Protection Agency
Region 4
Sam Nunn Atlanta Federal Center
61 Forsyth Street, S.W.
Atlanta, GA 30303


KATHRYN P. CABALLERO
Attorney-Advisor
Office of Civil Enforcement
Mail Code 2249A
United States Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

FOR THE FLORIDA DEPARTMENT OF ENVIRONMENTAL PROTECTION:

BARNEY J. CHISOLM, JR.
Deputy General Counsel
Fla. Bar No. 273475
Florida Department of Environmental Protection
3900 Commonwealth Blvd., M.S. 35
Tallahassee, FL 32399-3000
Telephone (850) 245-2275
Facsimile (850) 245-2303
e-mail: jack.chisolm@dep.state.fl.us