IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

UNITED STATES OF AMERICA, )
and )
FLORIDA DEPARTMENT OF )
ENVIRONMENTAL PROTECTION , )
 )
          Plaintiffs, )  Civil Action No.  8:10-cv-1756-T-24-EAJ
   v. )
 )
CF INDUSTRIES, INC., )
 )
         Defendant. )

**CONSENT DECREE**

    **WHEREAS**, Plaintiffs, the United States of America (United States), on behalf of the

United States Environmental Protection Agency (EPA), and the Florida Department of

Environmental Protection (FDEP) (together the Plaintiffs), have filed a complaint alleging that

Defendant, CF Industries, Inc., (CFI) has violated the Resource Conservation and Recovery Act

(RCRA), 42 United States Code (U.S.C.) § 6901 et seq., and the Florida Resource Recovery and

Management Act, § 403.702 et seq., Florida Statutes (F.S.), and the applicable regulations in

40 C.F.R. Parts 260-270, as adopted by reference in Chapter 62-730, Florida Administrative

Code (F.A.C.); at its Plant City, Florida phosphoric acid and fertilizer manufacturing facility

(Facility);

    **WHEREAS**, the Complaint includes allegations, disputed by CFI, that CFI failed to

characterize and illegally treated, stored and disposed of hazardous wastes from the production of

sulfuric acid, diammonium phosphate (DAP) and monoammonium phosphate (MAP) fertilizer;

wastes generated during cleaning of phosphoric acid plant and fertilizer plant equipment; and

wastewaters generated from the scrubbers used to control air pollution from the phosphoric acid plants. The Complaint also alleges, and CFI disputes, that CFI illegally placed hazardous wastes in a Phosphogypsum Stack System for managing phosphoric acid wastes exempt from hazardous waste regulation pursuant to the Bevill Exemption, 40 C.F.R. § 261.4(b)(7), thus violating Section 3005 of RCRA, 42 U.S.C. § 6925, and the applicable regulations in 40 C.F.R. Parts 260-270, as adopted by reference in Chapter 62-730, Florida Administrative Code (F.A.C.);

WHEREAS, the objective of the Parties in this Consent Decree is to establish injunctive relief whereby CFI shall modify certain operating practices with respect to its management of hazardous wastes and Bevill-Exempt wastes and implement environmental controls, remediation, and financial assurance as set forth herein, and to assess an appropriate penalty to resolve the allegations of the Complaint;

WHEREAS, CFI has conducted itself in good faith in its discussions with the Plaintiffs concerning the violations alleged in the Complaint, and has already implemented operational changes and corrective measures obviating the need for certain injunctive relief;

WHEREAS, by agreeing to entry of this Consent Decree, CFI makes no admission of law or fact with respect to the allegations in the Complaint and denies any non-compliance or violation of any law or regulation identified therein. For the purpose of avoiding litigation among the parties, however, CFI agrees to the requirements of this Consent Decree.

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties and that this Consent Decree is fair, reasonable, and in the public interest;

- 2 -

NOW, **THEREFORE,** before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, below, and with the consent of the Parties,

**IT IS HEREBY ADJUDGED, ORDERED, AND DECREED** as follows:

### I. JURISDICTION AND VENUE

1.       This Court has jurisdiction over the subject matter of this action and over the Parties, pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928, and 28 U.S.C. §§ 1331, 1332, 1345, 1355 and 1367. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1331, 1332, 1345, 1355, 1367, 1391(b) and (c), and 1395(a), and Section 3008(a) and (g) of RCRA, 42 U.S.C. § 6928(a) and (g), because CFI's phosphoric acid and ammoniated fertilizer Facility is located in the vicinity of Plant City, Florida, which is in this judicial district. For purposes of this Decree, or any action to enforce this Decree, EPA, FDEP, and CFI consent to the Court's jurisdiction over this Decree and any such action and over CFI and further consent to venue in this judicial district.

2.       Pursuant to Section 3008(a)(2) of RCRA, 42 U.S.C. § 6928(a)(2), notice of the commencement of this action has been given to FDEP.

3.       For purposes of this Consent Decree, CFI agrees that the Complaint states claims upon which relief may be granted pursuant to Sections 3004 and 3005 of RCRA, 42 U.S.C. § 6924 and 6925, and Sections 403.721, 403.722, and 403.727, F.S.

### II. APPLICABILITY

4.       The obligations of this Consent Decree apply to and are binding upon the United States, FDEP, and CFI and any successors, assigns, or other entities or persons otherwise bound

- 3 -

by law. Rights granted to EPA under this Consent Decree may be exercised by FDEP upon the written agreement of EPA and FDEP.

5.      No transfer of ownership or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve CFI of its obligation to ensure that the terms of the Decree are implemented, unless: (1) the transferee agrees in writing to undertake the obligations required by this Decree and to be substituted for CFI as a Party to the Decree and thus be bound by the terms thereof; and (2) the United States, after consultation with FDEP, consents in writing to relieve CFI of its obligations pursuant to Section XVII of this Consent Decree (Modification). At least thirty (30) Days prior to such transfer, or such other period agreed to by the Parties in writing, CFI shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement transferring obligations to the transferee, to EPA, FDEP, the United States Attorney for the Middle District of Florida, and the United States Department of Justice, in accordance with Section XIV of this Decree (Notices). The United States' determination whether to approve the transferee's substitution for CFI under this Consent Decree will take into account CFI's completion of all of the modifications to the Facility necessary to allow CFI to comply with the obligations of this Consent Decree and a demonstration that the transferee has the financial and technical capability to comply with this Consent Decree. The United States' decision to refuse to approve the substitution of the transferee for CFI shall be subject to dispute resolution pursuant to Section X (Dispute Resolution) of this Consent Decree, but any judicial review shall be conducted pursuant to Paragraph 70(a) of this Consent Decree. If Defendant does not prevail in such judicial review, Defendant shall pay all costs incurred by the United States in connection with such judicial review, including attorney's fees.  Any

- 4 -

transfer of ownership or operation of the facility without complying with this Paragraph constitutes a violation of this Decree.

6.      CFI shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform Work required under this Consent Decree. CFI shall condition any such contract upon performance of the Work in conformity with the terms of this Consent Decree.

7.      In any action to enforce this Consent Decree, CFI shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III. DEFINITIONS

8.      Except as otherwise provided in this Consent Decree (including its Appendices), definitions for the terms presented herein shall be incorporated from the following statutes and their corresponding regulations: RCRA, as amended, 42 U.S.C. §§ 6901 et seq. and the Florida Resource Recovery and Management Act, Sections 403.702 et seq., F.S., and Chapter 62-780, F.A.C. In the case of a conflict between the federal and state definitions, federal definitions shall control. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.      Bevill-Exempt Wastes shall mean Phosphogypsum and Process Wastewater from phosphoric acid mineral processing, which are solid wastes excluded from hazardous waste regulation pursuant to 40 C.F.R. § 261.4(b)(7)(ii)(D) and/or (P);

b.      Complaint shall mean the complaint filed by the United States and FDEP in this action;

- 5 -

c.    Consent Decree or Decree shall mean this Decree and all Appendices identified in Section XXIII (Appendices) and attached hereto. In the event of any conflict between this Decree and any Appendix hereto, this Decree shall control;

d.    Day shall mean a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal or State of Florida holiday, the period shall run until the close of business of the next business day;

e.    Defendant or CFI shall mean CF Industries, Incorporated;

f.    Downstream Operations shall mean all Facility operations involving the storage, management, transport, treatment, disposal or further processing of the First Saleable Product, manufacturing operations that use the First Saleable Product as a feedstock, and fluorosilicic acid (FSA) production operations, unless designated as a Mixed-Use Unit or Grandfathered Unit in the Facility Report.

g.    EPA shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

h.    Effective Date is defined in Section XVI;

i.    Facility shall mean CFI's manufacturing plant, Phosphogypsum Stack System, and all other contiguous or adjacent property owned and/or operated by CFI, that is located in the vicinity of Plant City, Florida at 10609 State Road 39 North, as delineated in Appendix 3, Site Map.

j.    Facility Report shall mean the report dated January 7, 2010, and attached hereto as Appendix 4, prepared by EPA following an inspection of the CFI Facility, which identifies CFI's Upstream and Downstream Operations, its Mixed-Use Units, and Grandfathered Units;

k.    FDEP shall mean the State of Florida Department of Environmental Protection and any of its successor departments or agencies;

l.    Financial Assurance shall mean financial assurance for the benefit of EPA and FDEP in order to ensure coverage for Third-party Liability, Phosphogypsum Stack System Closure, Long Term Care, and, if required, Corrective Action, as set forth in Appendix 2 of the Consent Decree;

m.    First Saleable Product shall mean:

1) Merchant Grade Acid ("MGA"), which is typically 52% to 54% (by weight) of $P_2O_5$ but may vary slightly, manufactured from the direct reaction of phosphate rock and sulfuric acid, and containing less than one percent (1%) solids content, whether or not it is actually placed into commerce; or, if applicable,

2) any intermediate phosphoric acid product with a $P_2O_5$ content less than or equal to MGA that is diverted from further processing into MGA in order to be placed into commerce, further concentrated above 54% $P_2O_5$ (by weight), or used as a feedstock in manufacturing MAP/DAP, Superphosphoric Acid (SPA), Purified Acid, or other chemical manufacturing products;

n.    Florida Phosphogypsum Rules shall mean Sections 376.30701, 403.087, 403.0876, 403.088, 403.0885, 403.121, 403.4154, and 403.4155, F.S., and the rules promulgated thereunder in Chapters 62-4, 62-520, 62-620, 62-672, 62-673, 62-777, and 62-780, F.A.C., pertaining to the operation and closure of phosphoric acid facilities within the State;

o.    FSA shall mean fluorosilicic acid ($H_2SiF_6$);

p.    Grandfathered Unit shall mean a pipe, tank and/or other production, storage, or transportation unit in Downstream Operations specifically identified in the Facility Report as not

- 7 -

feasibly segregable from Upstream Operations;

    q.    Interest shall mean the interest rate specified in 28 U.S.C. § 1961;

    r.    MAP/DAP shall mean monoammonium phosphate and/or diammonium phosphate;

    s.    Mixed-Use Unit shall mean a pollution control device, pipe, tank and/or other production, storage, or transportation unit specifically identified in the Facility Report as serving both Upstream Operations and Downstream Operations;

    t.    Non-Hazardous Aqueous Solution shall mean an aqueous solution used for cleaning pipes, tanks or other equipment that as a waste would not be a listed or characteristic hazardous waste, including without limitation fresh water, non-hazardous condensate, non-hazardous recycled water, and non-hazardous recovered groundwater;

    u.    Paragraph shall mean a portion of this Decree identified by an arabic numeral;

    v.    Parties shall mean the United States, FDEP and CFI;

    w.    Phosphogypsum shall mean calcium sulfate and byproducts produced by the reaction of sulfuric acid with phosphate rock to produce phosphoric acid. Phosphogypsum is a solid waste within the definition of Section 1004(27) of RCRA, 42 U.S.C. § 6903(27);

    x.    Phosphogypsum Stack shall mean any defined geographic area associated with a phosphoric acid production facility in which phosphogypsum is disposed of or stored, other than within a fully enclosed building, container or tank;

    y.    Phosphogypsum Stack System shall mean the defined geographic area associated with a phosphoric acid production facility in which Phosphogypsum and Process Wastewater is disposed of or stored, together with all pumps, piping, ditches, drainage, conveyances, water control structures, collection pools, cooling ponds, surge ponds, auxiliary holding ponds, regional

- 8 -

holding ponds, and any other collection or conveyance system associated with the transport of Phosphogypsum from the plant to the Phosphogypsum Stack, its management at the stack, and the Process Wastewater return to phosphoric acid production. This includes toe drain systems and ditches and other leachate collection systems, but does not include conveyances within the confines of the fertilizer production plant or emergency diversion impoundments used in emergency circumstances caused by rainfall events of high volume or duration for the temporary storage of Process Wastewater to avoid discharges to surface waters of the state;

z.       Process Wastewater shall mean process wastewater from phosphoric acid production. The following wastestreams constitute process wastewater from phosphoric acid production: water from phosphoric acid production operations through concentration to the First Saleable Product; process wastewater generated from Upstream Operations that is used to transport Phosphogypsum to the Phosphogypsum Stack; Phosphogypsum Stack runoff; process wastewater generated from the uranium recovery step of phosphoric acid production; process wastewater generated from non-ammoniated animal feed production defluorination operations that qualify as mineral processing operations based on the definition of mineral processing that EPA finalized on September 1, 1989; and process wastewater generated from the superphosphate production process that involves the direct reaction of phosphate rock with dilute, not Merchant Grade, phosphoric acid [see 55 Fed. Reg. 2328, January 23, 1990];

aa.      Purified Phosphoric Acid (PPA) shall mean a refined grade of phosphoric acid where contaminants have been removed from wet-process phosphoric acid through solvent extraction, chemical precipitation, filtration or other purification process to produce a purified phosphoric acid product suitable for food grade or other higher purity phosphoric acid applications;

- 9 -

bb.     Section shall mean a portion of this Decree identified by a roman numeral;

cc.     State shall mean the State of Florida;

dd.     Superphosphoric Acid (SPA) shall mean liquid phosphoric acid (not a solid

phosphate product such as granulated triple superphosphoric acid) generally with a $P_2O_5$ content

greater than 54%, resulting from the concentration of wet process acid that does not involve the

direct reaction of phosphate ore in such concentration operations;

ee.     Treatment shall mean any method, technique, or process, including

neutralization, designed to change the physical, chemical, or biological character or composition

of a waste so as to neutralize such waste or so as to recover energy or material resources from the

waste, or so as to change or reduce a hazardous constituent of the waste or make it safer to

transport, store, or dispose of, or amenable for recovery, amenable for storage, or reduced in

volume;

ff.     United States shall mean the United States of America, acting on behalf of EPA;

gg.     Upstream Operations shall mean all phosphoric acid mineral processing

operations resulting in the manufacture of the First Saleable Product; and

hh.     Work shall mean any activity that CFI must perform to comply with the

requirements of this Decree, including Appendices.

## IV. CIVIL PENALTY

9.     Within thirty (30) Days after the Effective Date of this Consent Decree, CFI shall

pay the sum of $701,050.00 as a civil penalty, together with Interest accruing from the date on

which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as

of the date of lodging, in accordance with the following Paragraphs.

10.    CFI shall pay $350,525.00 to the United States by FedWire Electronic Funds

Transfer (EFT) to the U.S. Department of Justice, in accordance with written instructions to be provided by the Financial Litigation Unit of the U.S. Attorney's Office for the Middle District of Florida, 400 N. Tampa Street, Suite 3200, Tampa, Florida, 33602 (813-274-6000) to CFI following lodging of the Consent Decree. At the time of payment, CFI shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, to the United States in accordance with Section XIV of this Decree (Notices); by email to acctsreceivable.CINWD@epa.gov; and by mail to:

EPA Cincinnati Finance Office
26 Martin Luther King Drive
Cincinnati, OH 45268

The transmittal letter shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in United States et al. v. CF Indus., Inc., and shall reference the civil action number and DOJ case number 90-7-1-08388/5.

11.    Within 30 Days after the Effective Date of this Consent Decree, CFI shall pay the sum of $350,525 as a civil penalty, to FDEP by EFT in accordance with instructions that will be provided by FDEP within ten (10) Days of the lodging of this Consent Decree. At the time of payment, CFI shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, to FDEP in accordance with Section XIV of this Consent Decree (Notices). The transmittal letter shall state that the payment is for a civil penalty owed pursuant to the Consent Decree in United States et al. v. CF Indus., Inc., and shall reference the FDEP OGC number 09-3352 and DOJ case number 90-7-1-08388/5.

12.    CFI shall not deduct any penalties paid under this Decree pursuant to this Section or Section VIII (Stipulated Penalties) in calculating its federal or state or local income tax.

- 11 -

## V. COMPLIANCE REQUIREMENTS

13.    Compliance Projects and Schedule. CFI shall undertake the actions set forth in Appendix 5 (Best Management Practices (BMP) Plan) of this Consent Decree to reduce the amount of non-hazardous ammoniated wastes deposited in the Phosphogypsum Stack System. CFI also shall implement certain Facility changes (including Project 1 as described on pp. 19-21 and pp. 35-37 of Section IV of Appendix 4 (Facility Report)), pursuant to the Compliance Schedule attached to this Consent Decree as Appendix 8. CFI shall complete all projects by the project completion dates set forth in Appendix 8.

14.    Hazardous Waste Determinations. CFI shall make a RCRA hazardous waste determination, pursuant to 40 C.F.R. § 262.11, of all non-Bevill-Exempt solid wastes that are not managed in accordance with Paragraphs 15-19, below, and, if the wastes are hazardous, CFI shall manage such wastes in compliance with RCRA Subtitle C.

15.    Wastes from Downstream Operations. Unless otherwise authorized by this Paragraph or Paragraphs 16-19 below, CFI  shall manage all hazardous wastes generated from Downstream Operations (including, without limitation, units that transport, store, treat, or manage the First Saleable Product (e.g., pipes, tanks, railcars); chemical manufacturing processes that use the First Saleable Product as a feedstock (e.g., MAP/DAP, SPA or PPA processes); FSA production processes;  pollution control devices, waste storage, transport and treatment units, and spills and leaks from all such processes and units) in compliance with RCRA Subtitle C, regardless of the use of any Bevill-Exempt Wastes as influent to such Downstream Operations. For any wastes generated by units that will be modified, shut down, or replaced in connection with, or for any wastes that will be managed differently as a result of Projects 1 (as identified on pp. 19-21 and pp. 35-37 in Section IV of Appendix 4 (Facility Report)), 2 and 3, as described in

- 12 -

Appendix 8 (BMP and Project Implementation Schedule), this Paragraph shall become effective upon completion of those Projects pursuant to the schedule in Appendix 8 (Compliance Schedule). Except as authorized by Section VI (Planned Phosphoric Acid Production Operations) and Section VIII (Authorized Future Installations) of Appendix 4 (Facility Report), if any Mixed-Use Units or Grandfathered Units are replaced or reconfigured after the date of the Facility Report such that they serve to manage, store or transport materials from Downstream Operations that are not identified in the Facility Report as being associated with those Units, they will be deemed to serve Downstream Operations, and any hazardous wastes generated from such units must be treated, managed, stored, transported, and disposed of in accordance with RCRA Subtitle C.

16.    Wastes from Upstream Operations: Phosphoric Acid Scrubber Wastes. Wastes from air pollution control devices that are associated with Upstream Operations, or that are identified as Mixed-Use Units in the Facility Report, may be (a) input to Upstream Operations, or (b) treated, stored, managed, transported or disposed of together with Bevill-Exempt Wastes, provided that CFI deposits such wastes only in a Phosphogypsum Stack System subject to and in compliance with the requirements of Appendix 1, Attachment B (Groundwater and Zone of Discharge Requirements) and Attachment C (Phosphogypsum Stack System Construction and Operational Requirements) to this Consent Decree, and EPA has not made a determination that the Financial Assurance provided by Defendant no longer satisfies the requirements of this Consent Decree (Paragraph 26 and Appendix 2), pursuant to Paragraph 34 of Appendix 2.

17.    Wastes from Upstream Operations: Cleaning Wastes. Wastes generated from the use of pond water from the Phosphogypsum Stack System, Process Wastewater, or a Non-Hazardous Aqueous Solution to clean pipes, tanks, process equipment, or other storage or

- 13 -

transport units that are: (i) associated with Upstream Operations; (ii) serve to manage, store, or transport Bevill-Exempt Wastes; or (iii) identified as Mixed-Use or Grandfathered Units in the Facility Report, may be (a) input to Upstream Operations, or (b) treated, stored, managed, transported and disposed of together with Bevill-Exempt Wastes, provided that CFI deposits such wastes only in a Phosphogypsum Stack System subject to and in compliance with the requirements of Appendix 1, Attachment B (Groundwater and Zone of Discharge Requirements) and Attachment C (Phosphogypsum Stack System Construction and Operational Requirements) to this Consent Decree, and EPA has not made a determination that the Financial Assurance provided by Defendant no longer satisfies the requirements of this Consent Decree (Paragraph 26 and Appendix 2), pursuant to Paragraph 34 of Appendix 2. Following the completion of Project 3 as set forth in Appendix 8 (Compliance Schedule), if CFI, in the cleaning of Upstream Operation units, uses sulfuric acid or any other chemical cleaning agent that, as a waste, would generate a hazardous waste when mixed with Bevill-Exempt Process Wastewater under the Bevill Mixture Rule, 40 C.F.R. § 261.3(a)(2)(i), then CFI shall make a RCRA hazardous waste determination of the cleaning wastes, pursuant to 40 C.F.R. § 262.11, and, if the wastes are hazardous, CFI shall manage such wastes in compliance with RCRA Subtitle C.

   18.    Wastes from Upstream Operations: Spills and Leaks. Spills and leaks of all grades of phosphoric acid product from Upstream Operations, Mixed-Use Units, and Grandfathered Units that are not subject to separate containment apart from Process Wastewater, as identified in Appendix 4 (Facility Report), shall be minimized and properly managed, tracked, and reported, in accordance with Appendix 5 (BMP Plan) for Phosphoric Acid Product Handling. This requirement shall also apply to leaks of sulfuric acid used as a feedstock within the phosphoric acid plant battery limits that are not subject to separate containment. CFI shall

- 14 -

notify EPA and FDEP, pursuant to Paragraph 40, in the event of a release of: (i) phosphoric acid product(s) identified in Appendix 4 (Facility Report), as measured pursuant to Appendix 5 (BMP Plan), that exceeds 5,000 gallons in a 24-four period; or (ii) sulfuric acid used as a feedstock within the phosphoric acid plant battery limits, as measured pursuant to the requirements of the BMP, that exceeds 1,000 gallons in a 24-hour period. Such notice(s) shall be in addition to any notices required by Section 103 of the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9603, or Section 304 of the Emergency Planning and Community Right to Know Act, 42 U.S.C. § 11004. In the event of: (i) a release of phosphoric acid that exceeds 10,000 gallons in a 24-hour period on two (2) or more Days in a calendar quarter, or a release of sulfuric acid that exceeds 1,000 gallons in a 24-hour period on two (2) or more Days in a calendar quarter, where such releases are captured within a Phosphogypsum Stack System that complies with the requirements of Appendix 1, Attachment C, Section VI (Phosphogypsum Stack System Construction Requirements); or (ii) a release of phosphoric acid that exceeds 500 gallons in a 24-hour period on two (2) or more Days in a calendar quarter, or a release of sulfuric acid that exceeds 65 gallons in a 24-hour period on two (2) or more Days in a calendar quarter, where such releases are not captured within a Phosphogypsum Stack System that complies with the requirements of Appendix 1, Attachment C, Section VI (Phosphogypsum Stack System Construction Requirements), CFI within ten (10) days of the second such release shall submit to EPA for approval a plan for any necessary corrective action as a result of the releases, as well as proposed modifications to the BMP Plan to avoid, minimize, or contain future such releases.

19.   Wastes from Treatment of Phosphogypsum Stack Wastes. Wastes generated from the treatment of materials in the Phosphogypsum Stack System that does not introduce hazardous constituents or other contaminants into such materials may be (a) input to Upstream Operations,

- 15 -

or (b) treated, stored, managed, transported and disposed of together with Bevill-Exempt Wastes, provided that CFI deposits such wastes only in a Phosphogypsum Stack System subject to and in compliance with the requirements of Appendix 1, Attachment B (Groundwater and Zone of Discharge Requirements) and Attachment C (Phosphogypsum Stack System Construction and Operational Requirements) to this Consent Decree, and EPA has not made a determination that the Financial Assurance provided by Defendant no longer satisfies the requirements of this Consent Decree (Paragraph 26 and Appendix 2), pursuant to Paragraph 34 of Appendix 2.

20.    Sulfuric Acid Plant.    CFI shall implement the Sulfuric Acid Plants Hazardous Waste Management Plan attached hereto as Appendix 6 and shall manage hazardous waste generated at the sulfuric acid plants in accordance with applicable law. CFI shall periodically submit to EPA for review and approval updates to the Sulfuric Acid Plants Hazardous Waste Management Plan.

21.    Site Assessment and Corrective Action.    Plaintiffs agree that CFI has already completed activities substantially equivalent to those specified in Appendix 1, Attachment A (Site Assessment, Reporting, and Corrective Measures), and which satisfy the requirements of that Attachment. Attachment A is included as part of this Consent Decree in order to advise the Court and the public of remedial activities already completed by CFI as part of its settlement with the United States and Florida.

22.    Phosphogypsum Stack System.    CFI shall comply with all requirements set forth in Appendix 1, Attachment B (Groundwater and Zone of Discharge Requirements), Attachment C (Phosphogypsum Stack System Construction and Operational Requirements), Attachment D (Closure of Phosphogypsum Stacks/Stack Systems), and Attachment E (Imminent and Substantial Endangerment Diagnostic Requirements).  While certain requirements of these

- 16 -

Attachments are more stringent or detailed than the requirements of the Florida Phosphogypsum Rules, as further detailed in the following Paragraph, the majority of the Work required by the above-cited Attachments is also required under the Florida Phosphogypsum Rules.

23.     EPA will consult periodically with FDEP regarding CFI's compliance with the Florida Phosphogypsum Rules. If EPA agrees that CFI is in compliance with the Florida Phosphogypsum Rules, using the definition of Bevill-Exempt Wastes set forth in this Consent Decree, such compliance shall be deemed to satisfy the Work requirements of Appendix 1, Attachments B, C, D and E, provided that CFI also complies with the following three (3) specific Work requirements of Appendix 1 that are more stringent or detailed than the Florida Phosphogypsum Rules:

(a)  The Stack Closure Plan shall be amended as needed to include the requirements of Rule 62-673.600(3), F.A.C., and a description of the physical configuration of the Phosphogypsum Stack System and process water inventory for the period of time that the most costly scenario for closure is determined as calculated in accordance with Appendix 2 (Financial Assurance);

(b) The Permanent Closure Plans incorporated in the closure operation permit application shall conform to the requirements in Rule 62-673.610(7), F.A.C., and must include: (1) a revised estimate of all costs associated with stack closing, long-term care and site-specific water management activities being undertaken under the Permanent Stack Closure Plan in accordance with Appendix 2 (Financial Assurance); and (2) a description of the proposed method of demonstrating financial responsibility for the long-term monitoring and maintenance in accordance with Appendix 2 (Financial Assurance);

(c) As of the fifth anniversary of the Effective Date of this Consent Decree, no Bevill-Exempt Wastes shall be placed in an unlined Phosphogypsum Stack System.  Plaintiffs agree that the Facility's Phosphogypsum Stack System as it exists on the Effective Date of this Consent Decree is a lined system consistent with the requirements of Appendix 1, Attachment C (Phosphogypsum Stack System Construction and Operational Requirements).  Plaintiffs further agree that the use of the alternative synthetic liner system in certain portions of the Facility's Phosphogypsum Stack System, including the area known as the "Notch," which has been previously approved by the FDEP, is an acceptable alternative to the

- 17 -

composite liner design requirement set forth in Attachment C, Section VI (Phosphogypsum Stack System Construction Requirements).

24.     EPA reserves the right to fully and directly enforce all requirements of Appendix 1, Attachments B, C, D, and E, if it finds that CFI is not in compliance with the Florida Phosphogypsum Rules, or if the Florida Phosphogypsum Rules are modified and EPA determines that such modifications do not comport with the Work requirements of the above-cited Attachments. Any decision by EPA to directly enforce the Work requirements of this Consent Decree shall not be subject to judicial review, but shall be subject to dispute resolution (other than judicial review) pursuant to Section X (Dispute Resolution) of this Consent Decree, although CFI retains its right to invoke dispute resolution as set forth in Section X (Dispute Resolution) regarding any liability for stipulated penalties due to any asserted non-compliance with the Work requirements of this Consent Decree.

25.     Plaintiffs agree that CFI has already met the requirements of (a) Section II (Assessment of Existing Perimeter Dikes) of Attachment C (Phosphogypsum Stack System Construction and Operational Requirements) by submitting to FDEP a report prepared by Ardaman & Associates, dated April 16, 2007, regarding the Assessment of Existing Earthen Perimeter Dikes and Process Water Conveyance and Containment Systems Relative to Requirements of Rule 62-672, Plant City Phosphate Complex, Hillsborough County, Florida, attached hereto as Appendix 7; and (b) Section I (General Requirements for the Stack Closure Plan) of Attachment D (Closure of Phosphogypsum Stacks/Stack Systems), by submitting a Stack Closure Plan to FDEP. Plaintiffs further agree that CFI has a zone of discharge authorized by FDEP before the Effective Date of this Consent Decree and that such zone of discharge shall continue to apply unless modified pursuant to Section II.B. of Attachment B.

- 18 -

26.     Financial Assurance. CFI shall secure and maintain Financial Assurance for the benefit of EPA and FDEP pursuant to the requirements of Appendix 2 (Financial Assurance) of this Consent Decree, in order to ensure coverage for: (a) Third-party Liability; (b) Phosphogypsum Stack System Closure (including Long-Term Care) as required under Appendix 1, Attachment D; and, (c) Corrective Action, if required pursuant to Appendix 1, Attachment A. Nothing in this Paragraph shall be construed to waive or subordinate CFI's obligation to comply with Chapter 62-673, F.A.C., of the Florida Phosphogypsum Rules regarding financial assurance. CFI's inability to secure and/or maintain adequate Financial Assurance shall in no way excuse performance of the Work or any other requirement of this Consent Decree.

27.     In addition to the financial assurance information included in the reports provided pursuant to Section VII (Reporting Requirements) of this Consent Decree, CFI, within fourteen (14) days of any request by EPA or FDEP, shall provide requested information or reports regarding the financial status of CFI, the financial mechanism(s) provided by CFI to meet its obligation for Financial Assurance, and the financial institution or guarantor providing the financial mechanism(s) to secure CFI's obligation.

28.     Approval of Submissions. After review of any work plan, report, or other item that is required to be submitted, or revised and resubmitted, to EPA for approval pursuant to this Consent Decree, EPA, after consultation with FDEP, shall in writing: (a) approve the submission; (b) approve the submission upon specified conditions; (c) approve part of the submission and disapprove the remainder; or (d) disapprove the submission. In the event of disapproval of any portion of the submission, EPA shall include a statement of the reasons for such disapproval in its response. All work plans, reports and other items that are developed and

- 19 -

submitted to EPA for approval pursuant to this Consent Decree shall be complete and technically adequate.

29.     If the submission is approved pursuant to Paragraph 28, CFI shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved. If the submission is conditionally approved or approved only in part, pursuant to Paragraph 28(b) or (c), CFI shall, upon written direction from EPA, take all actions required by the approved plan, report, or other item that EPA determines are technically severable from any disapproved portions, subject to CFI's right to dispute only the specified conditions or the disapproval of portions of the submission under Section X of this Decree (Dispute Resolution).

30.     If the submission is disapproved in whole or in part pursuant to Paragraph 28(c) or 28(d), CFI shall, within sixty (60) Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs. If the resubmission is approved in whole or in part, CFI shall proceed in accordance with the preceding Paragraph.

31.     Any stipulated penalties applicable to the original submission, as provided in Section VIII (Stipulated Penalties) of this Decree, shall accrue during the sixty (60)-Day period or other agreed period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of CFI's obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

32.     If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA, after consultation with FDEP may again require CFI to correct any deficiencies in accordance with the preceding Paragraphs, or may itself correct any deficiencies, subject to CFI's right to invoke dispute resolution under Section X (Dispute Resolution) and the right of EPA and FDEP to seek stipulated penalties as provided in the preceding Paragraphs. If the resubmission is approved or corrected in whole or in part, CFI shall proceed in accordance with Paragraph 28.

33.     Correction of Non-Compliance.  If CFI violates, or determines that it will violate, any requirement of Section V (Compliance Requirements) of this Consent Decree other than those set forth in Paragraph 26 (which are governed by Appendix 2 (Financial Assurance)), it shall: (a) comply with the reporting obligations of Section VII (Reporting Requirements) of this Consent Decree; (b) pay any penalties pursuant to Section VIII (Stipulated Penalties) of this Consent Decree unless waived pursuant to Paragraph 53 of this Consent Decree; and (c) if the violation has not been corrected prior to reporting to EPA, submit to EPA and subsequently implement a Correction Plan to rectify the violation.  Nothing in this Paragraph shall be construed as EPA approval of CFI's correction efforts pursuant to this Paragraph or Appendix 2, or as limiting the rights reserved by Plaintiffs under Section XII (Effect of Settlement/Reservation of Rights), and EPA further reserves the right to require, upon written request, that a Correction Plan be submitted to EPA for approval in accordance with Paragraphs 28-32, above.

34.     Permits.  Where any compliance obligation under this Section requires CFI to obtain a federal, state, or local permit, or approval, CFI shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.  CFI may

seek relief under the provisions of Section IX of this Consent Decree (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if CFI has submitted timely and complete applications and has taken all other actions necessary to timely obtain all such permits or approvals.

35.    Provided that CFI: (a) remains in compliance with Section V (Compliance Requirements) of this Consent Decree (including any modifications made pursuant to Section IX (Force Majeure) or Section XVII (Modification)); or (b) satisfactorily corrects any instances of non-compliance with Section V (Compliance Requirements) obligations pursuant to Paragraph 33 or prevails in dispute resolution pursuant to Section X (Dispute Resolution) of this Consent Decree, and is not subject to a Work Takeover pursuant to Section VI (Work Takeover) of this Consent Decree, it shall not be required to obtain a RCRA permit as a Treatment Storage and Disposal Facility under RCRA Subtitle C with respect to: (1) the treatment, storage, transport, management, and disposal of Bevill-Exempt Wastes that have been commingled with hazardous wastes prior to the lodging of this Consent Decree, as alleged in the Complaint; and (2) wastes that Paragraphs 15 through 19 allow to be input to Upstream Operations or managed together with Bevill-Exempt Wastes.

## VI.  WORK TAKEOVER

36.    In the event EPA determines that CFI has: (a) ceased implementation of any portion of the Work; or (b) is seriously or repeatedly deficient or late in its performance of the Work; or (c) is implementing the Work in a manner that may cause an endangerment to human health or the environment, EPA, after consultation with FDEP, may issue a written notice (Work Takeover Notice) to CFI. Any Work Takeover Notice issued by EPA shall specify the grounds

upon which such notice was issued and shall provide CFI a period of thirty (30) Days within which to remedy the circumstances giving rise to EPA's issuance of such notice.

37.    If, after expiration of the thirty (30)-Day period specified in Paragraph 36 of this Section, CFI has not remedied to EPA's satisfaction the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, EPA may at any time thereafter assume and/or direct the performance of all or any portions of the Work as EPA deems necessary (Work Takeover). EPA shall notify CFI in writing (which writing may be electronic) if EPA determines that implementation of a Work Takeover is warranted under this Consent Decree.

38.    In the event that CFI invokes dispute resolution with respect to EPA's Work Takeover, pursuant to Section X (Dispute Resolution) of the Consent Decree, EPA during the pendency of any such dispute may, in its unreviewable discretion, commence and continue a Work Takeover until the earlier of: (a) the date that CFI remedies, to EPA's satisfaction, the circumstances giving rise to original issuance of the Work Takeover Notice; or (b) the date that a final decision is rendered in accordance with Section X (Dispute Resolution) of the Consent Decree requiring EPA to terminate such Work Takeover.

39.    After commencement and for the duration of any Work Takeover, CFI shall provide EPA with immediate access to and benefit of any Financial Assurance for such Work provided pursuant to Paragraph 26 and Appendix 2 (Financial Assurance) of this Consent Decree. If CFI refuses to provide the Financial Assurance, or the Work addressed by the Work Takeover is not covered by Financial Assurance, then any unreimbursed costs incurred by EPA in connection with the Work Takeover shall be considered a financial obligation owed by Defendant to the United States and collectible in an action to enforce this Consent Decree. Nothing in this Paragraph shall be construed to relieve CFI of its obligation to provide adequate

Financial Assurance pursuant to Appendix 2.

## VII. REPORTING REQUIREMENTS

40.     Within thirty (30) Days after the end of each calendar-quarter after lodging of this Consent Decree, until the quarter ending after the two (2)-year anniversary of the date of lodging, CFI shall submit to EPA and FDEP a report for the preceding calendar quarter (quarters shall end on March 31, June 30, September 30 and December 31 of each year) that shall include the status of any construction or compliance measures; completion of milestones; problems encountered or anticipated, together with implemented or proposed solutions; status of permit applications; operation and maintenance difficulties or concerns; status of Financial Assurance; reports to state agencies; and the log of spills and leaks tracked pursuant to the BMP. Thereafter, CFI shall submit such reports to Plaintiffs on a semi-annual basis until the quarter following the five (5)-year anniversary of the lodging of this Decree. Thereafter, CFI shall submit such reports annually until such time as CFI submits the Closure Application pursuant to Appendix 1, Attachment D (Closure of Phosphogypsum Stacks/ Stack Systems). CFI shall submit its next report within one-hundred twenty (120) Days after that time, on a date no more than thirty (30) Days after the end of the quarter following approval of the Closure Application. Thereafter, CFI shall again submit quarterly reports for a period of two (2) years. Thereafter CFI shall submit reports annually until the termination of this Decree pursuant to Section XVIII (Termination).

41.     The reports shall also include a description of any violation of the requirements of this Consent Decree and an explanation of the likely cause of the violation and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If CFI violates, or determines that it will violate, any requirement of this Consent Decree, CFI shall notify EPA and FDEP of such violation and its likely duration, in writing, within ten (10) working Days of the day CFI

- 24 -

first becomes aware of the violation, with an explanation of the likely cause of the violation and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the report is due, CFI shall so state in the report. CFI shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within thirty (30) Days of the day CFI becomes aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves CFI of its obligation to provide the notice required by Section IX of this Consent Decree (Force Majeure).

42.     Whenever any event affecting CFI's performance under this Decree, or the performance of its Facility, may pose an immediate threat to the public health or welfare or the environment, CFI shall notify EPA and FDEP as per Section XIV (Notices), as well as EPA Region 4 Emergency Response, orally or by electronic or facsimile transmission as soon as possible, but no later than twenty-four (24) hours after CFI first knew of the violation or event, and shall comply with the requirements of Appendix 1, Attachment E (Imminent and Substantial Endangerment Diagnostic Requirements). This notice requirement is in addition to the requirement to provide notice of a violation of this Consent Decree set forth in the preceding Paragraph.

43.     All reports and reporting obligations shall be submitted to the persons designated in Section XIV of this Consent Decree (Notices).

44.     Each report submitted by CFI under this Section shall be signed by a responsible corporate official of CFI (as defined in 40 C.F.R. § 270.11(a)) and shall include the following certification:

- 25 -

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency notifications where compliance would be impractical.

45.     The reporting requirements of this Consent Decree do not relieve CFI of any reporting obligations required by RCRA or its implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

46.     Any information provided pursuant to this Consent Decree may be used by the Plaintiffs in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VIII. STIPULATED PENALTIES

47.     CFI shall be liable as of the Effective Date of this Consent Decree for stipulated penalties to the United States and FDEP for violations of this Consent Decree as specified below, unless excused under Section IX (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

48.     If CFI fails to pay the civil penalty required to be paid under Section IV of this Decree (Civil Penalty) when due, CFI shall pay a stipulated penalty of $1,000 per day for each Day that the payment is late for the first ten (10) Days, together with Interest.  Thereafter, CFI

- 26 -

shall pay $3,000 per day for each Day that the payment is late, with Interest. Late payment of the civil penalty shall be made in accordance with Section IV (Civil Penalty), Paragraph 10. Stipulated penalties shall be paid in accordance with Paragraphs 51, 52, 54 and 55, below. All transmittal correspondence shall state that any such payment is for late payment of the civil penalty due under this Decree, or for stipulated penalties for late payment, as applicable, and shall include the identifying information set forth in Paragraph 10, above.

49.   Compliance Milestones

The following stipulated penalties shall accrue per violation per day for each violation of the requirements identified in Section V (Compliance Requirements):

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $1,000 | 1st through 14th Day |
| $2,000 | 15th through 30th Day |
| $3,000 | 31st Day and beyond |

50.   Reporting Requirements. The following stipulated penalties shall accrue per violation per day for each violation of the requirements of Section VII of this Consent Decree (Reporting Requirements):

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $750 | 1st through 14th Day |
| $1,000 | 15th through 30th Day |
| $2,000 | 31st Day and beyond |

51.   Subject to the provisions of Paragraph 31, above, stipulated penalties under this Section shall begin to accrue on the day after performance is due or on the day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily

- 27 -

completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

52.     CFI shall pay stipulated penalties to the United States and to FDEP within ten (10) Days of a written demand by either Plaintiff. CFI shall pay fifty percent (50%) of the total stipulated penalty amount due to the United States and fifty percent (50%) to FDEP. The Plaintiff making a demand for payment of a stipulated penalty shall simultaneously send a copy of the demand to the other Plaintiff.

53.     The Plaintiffs, may, in the unreviewable exercise of their respective discretion, reduce or waive stipulated penalties otherwise due to that Plaintiff under this Consent Decree. The determination by one Plaintiff not to seek stipulated penalties, or to subsequently waive or reduce the amount it seeks, shall not preclude the other Plaintiff from seeking the full amount of the stipulated penalties owed.

54.     Stipulated penalties shall continue to accrue as provided in Paragraph 51, during any Dispute Resolution, but need not be paid until the following:

a. If the dispute is resolved by agreement or by a decision of the United States or FDEP that is not subject to judicial review or appealed to the Court, CFI shall pay accrued penalties determined to be owing, together with Interest, to the United States or FDEP within thirty (30) Days of the effective date of the agreement or the receipt of the United States' or FDEP's decision or order.

b. If the dispute is appealed to the Court and the United States or FDEP prevails in whole or in part, CFI shall pay all accrued penalties determined by the Court to be owing, together with Interest, within sixty (60) Days of receiving the final appellate Court decision.

55.     CFI shall pay stipulated penalties owing to the United States in the manner set

- 28 -

forth and with the confirmation notices required by Paragraph 10, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid. CFI shall pay stipulated penalties owing to FDEP in accordance with Paragraph 11, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

56.    CFI shall not deduct Stipulated Penalties paid under this Section in calculating its state and federal income tax.

57.    If CFI fails to pay stipulated penalties according to the terms of this Consent Decree, CFI shall be liable for Interest on such penalties, as provided for in 28 U.S.C.§ 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States or FDEP from seeking any remedy otherwise provided by law for CFI's failure to pay any stipulated penalties.

58.    Subject to the provisions of Section XII of this Consent Decree (Effect of Settlement/ Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States or FDEP for CFI's violation of this Consent Decree or applicable law.  Where a violation of this Consent Decree is also a violation of relevant statutory or regulatory requirements, CFI shall be allowed a credit for any stipulated penalties paid against any statutory penalties imposed for such violation.

## IX. FORCE MAJEURE

59.    Force majeure, for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of CFI, of any entity controlled by CFI, or of CFI's contractors, that delays or prevents the performance of any obligation under this Consent Decree

despite CFI's best efforts to fulfill the obligation. The requirement that CFI exercise best efforts to fulfill the obligation includes using best efforts to anticipate any potential force majeure and best efforts to address the effects of any potential force majeure (1) as it is occurring and (2) following the potential force majeure such that the delay and any adverse effects of the delay are minimized to the greatest extent possible. Force Majeure does not include CFI's financial inability to perform any obligation under this Consent Decree

60.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, CFI shall provide notice orally or by electronic or facsimile transmission as soon as possible, as provided in Section XIV of this Consent Decree (Notices), but not later than seventy-two (72) hours after the time when CFI first knew that the event might cause a delay. Within ten (10) Days thereafter, CFI shall provide written notice to EPA and FDEP with an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; CFI's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of CFI, such event may cause or contribute to an endangerment to public health, welfare or the environment. CFI shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. CFI shall include with any notice all available documentation supporting its claim that the delay was attributable to a force majeure. CFI shall be deemed to know of any circumstance of which CFI, any entity controlled by CFI, or CFI's contractors knew or reasonably should have known. Failure to comply with the above requirements regarding an event shall preclude CFI from

asserting any claim of force majeure regarding that event, provided, however, that if EPA, despite the late notice, is able to assess to its satisfaction whether the event is a force majeure under Paragraph 59 and whether CFI has exercised its best efforts under Paragraph 60, EPA may, in its unreviewable discretion, excuse in writing CFI's failure to submit timely notices under this Paragraph.

61.     If EPA, after consultation with FDEP, agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA, after consultation with FDEP, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. If EPA, after consultation with FDEP, agrees that the delay is attributable to a force majeure event, EPA will notify CFI in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

62.     If EPA ,after consultation with FDEP, does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify CFI in writing of its decision.

63.     If CFI elects to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution), it shall do so no later than fifteen (15) days after receipt of EPA's notice. In any such proceeding, CFI shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and

that CFI complied with the requirements of Paragraphs 59 and 60, above. If CFI carries this burden, the delay at issue shall be deemed not to be a violation by CFI of the affected obligation of this Consent Decree identified to EPA and the Court.

## X. DISPUTE RESOLUTION

64.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve all disputes arising under or with respect to this Consent Decree. CFI's failure to seek resolution of a dispute under this Section shall preclude CFI from raising any such issue as a defense to an action by the United States or FDEP to enforce any obligation of CFI arising under this Decree.

65.     Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations, which may include any third-party assisted, non-binding alternative dispute resolution process agreeable to the Parties. CFI shall submit a written Notice of Dispute to both the United States and FDEP within twenty (20) Days after receiving written notice from EPA or FDEP of a decision that CFI disputes. The dispute shall be considered to have arisen on the date that both the United States and FDEP have received a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed twenty (20) Days from the date that both Plaintiffs have received the Notice of Dispute, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position of EPA, after consultation with FDEP, shall be considered binding, unless CFI invokes formal dispute resolution procedures as provided in the following Paragraph.

66.     Formal Dispute Resolution. If CFI invokes formal dispute resolution pursuant to Paragraph 65, CFI shall, within thirty (30) Days after the conclusion of the informal negotiation

period, serve on the United States and FDEP a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting CFI's position and any supporting documentation relied upon by CFI.

67.     The United States, after consultation with FDEP, shall serve its Statement of Position within forty-five (45) Days of receipt of CFI's Statement of Position. The United States' Statement of Position shall include or clearly reference, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute. The United States' Statement of Position shall be binding on CFI, unless CFI files a motion for judicial review of the dispute in accordance with the following Paragraph.

68.     CFI may seek judicial review of the dispute by filing with the Court and serving on the United States and FDEP, in accordance with Section XIV of this Consent Decree (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within twenty (20) Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of CFI's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

69.     The United States, after consultation with FDEP, shall respond to CFI's motion within the time period allowed by the Local Rules of this Court. CFI may file a reply memorandum, to the extent permitted by the Local Rules.

70.   Standard of Review

a. Disputes Concerning Matters Accorded Record Review.  In any dispute brought under this Section pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA under this Consent Decree; the adequacy of the performance of Work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, EPA shall compile an administrative record of the dispute containing all Statements of Position, including supporting documentation and referenced data or information, and CFI shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b. In any other dispute brought under this Section, CFI shall bear the burden of demonstrating that its position complies with and furthers the objectives of this Consent Decree.

71.   The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of CFI under this Consent Decree, unless and until final resolution of the dispute so provides or unless ordered by the Court. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 54. If CFI does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VIII (Stipulated Penalties).

- 34 -

## XI. INFORMATION COLLECTION AND RETENTION

72.    The United States, FDEP, and their representatives, including attorneys, contractors, and consultants, shall have the right of entry into the Plant City Facility, at all reasonable times, upon presentation of appropriate identification, to:

a.   monitor the progress of activities required under this Consent Decree;

b.   verify any data or information submitted to the United States or FDEP in accordance with the terms of this Consent Decree;

c.   obtain samples and, upon request, splits of any samples taken by CFI or its representatives, contractors, or consultants;

d.   obtain documentary evidence, including photographs and similar data;

e.   assess CFI's compliance with this Consent Decree; and

f.   conduct Work pursuant to Section VI (Work Takeover) of this Consent Decree.

73.    Upon request, CFI shall provide EPA, FDEP or their authorized representatives splits of any samples taken by CFI. Upon request, EPA and FDEP shall provide CFI splits of any samples taken by EPA, FDEP, or their authorized representatives.

74.    CFI shall retain, and shall require its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, emails or other information in electronic form) in its or its contractors or agents possession or control, or that come into its or its contractors or agents possession or control, and that relate to CFI's performance of its obligations under this Consent Decree for a period of five (5) years after the creation of such documents, records or other information. This information-retention requirement shall apply regardless of any contrary corporate or institutional

- 35 -

policies or procedures. At any time during this information-retention period, upon request by the United States or FDEP, CFI shall provide copies of any documents, records, or other information required to be maintained under this Paragraph. CFI shall not dispose of materials following the expiration of its five (5) year retention period more often than once a year.

75.     At the conclusion of the information-retention period provided in the preceding Paragraph, CFI shall notify the United States and FDEP at least ninety (90) Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States or FDEP, CFI shall deliver any such documents, records, or other information to EPA or FDEP. CFI may assert that certain documents, records, or other information are privileged under the attorney-client privilege or any other privilege recognized by federal law, provided that CFI shall not assert a legal privilege for any data, records or information (excluding legal advice) generated or received in connection with CFI's obligations pursuant to the requirements of this Consent Decree. If CFI asserts a privilege, it shall provide the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of each author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by CFI. If Plaintiffs and CFI disagree as to whether a particular document or record is privileged, CFI shall deliver such document or record to the United States or the FDEP unless it invokes dispute resolution pursuant to Section X (Dispute Resolution), in which case, CFI shall not have an obligation to deliver such document or record until a final determination is made, pursuant to the procedures set forth in Section X (Dispute Resolution), that such document or record is not privileged.

76.     CFI may also assert that information required to be provided under this Section is protected as Confidential Business Information (ACBI@) under 40 C.F.R. Part 2. As to any information that CFI seeks to protect as CBI, CFI shall follow the procedures set forth in 40 C.F.R. Part 2.

77.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or FDEP pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of CFI to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XII. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

78.     This Consent Decree resolves the civil claims of the United States and FDEP for the violations alleged in the Complaint filed in this action through the date of the lodging of the Consent Decree. Provided that CFI complies with this Consent Decree from the date of lodging of the Consent Decree through its Effective Date, these claims shall also be resolved through the Effective Date of this Consent Decree, as of the Effective Date. Provided that CFI complies with the Consent Decree from the Effective Date of this Consent Decree through the date of termination of this Consent Decree pursuant to Section XVIII (Termination), these claims shall be finally resolved as of the date the Consent Decree terminates.

79.     This resolution of the United States' and FDEP's civil claims set forth in the Complaint is expressly conditioned upon complete and satisfactory performance of the requirements set forth herein. The United States and FDEP reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree, and CFI reserves all legal and equitable defenses available to it in the defense of any such enforcement. This Consent

Decree shall not be construed to limit the rights of the United States or FDEP to obtain penalties or injunctive relief under the federal and state environmental statutes or their implementing regulations, or under other federal or state law regulations or permit conditions, including Section 3008(h) of RCRA, 42 U.S.C.§ 6928(h), except as expressly specified in Paragraph 78 with respect to the civil claims alleged in the Complaint. The United States and FDEP further retain all authority and reserve all rights to take any and all actions authorized by law to protect human health and the environment, including all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, CFI's Plant City Facility, whether related to the violations addressed in this Consent Decree or otherwise.

80.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local law or regulation. CFI is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and CFI's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such law, regulation, or permit, except as expressly specified in Paragraph 78 with respect to the civil claims alleged in the Complaint. The United States and FDEP do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that CFI's compliance with any aspect of this Consent Decree will result in compliance with provisions of RCRA, or with any other provision of federal, State, or local law, regulation, or permit.

81.     This Consent Decree does not limit or affect the rights of CFI or of the United States or FDEP against any third parties, not a Party to this Consent Decree, nor does it limit the rights of third parties, not a Party to this Consent Decree, against CFI, except as otherwise provided by law.

- 38 -

82.     This Consent Decree shall not be construed to create rights or obligations in, or grant any cause of action to, any third party not party to this Consent Decree.

83.     Nothing in the Complaint filed in this action or in this Consent Decree, including the execution and implementation of this Consent Decree, shall constitute an admission by Defendant of any of the allegations of the Complaint.  The terms of this Consent Decree may not be used as evidence in any litigation between the Parties except pursuant to Section X (Dispute Resolution) or in an action to enforce this Consent Decree.

## XIII.  COSTS

84.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States and FDEP shall be entitled to access Financial Assurance pursuant to Paragraph 26 and Appendix 2 (Financial Assurance) of this Consent Decree, and to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties or other costs due under this Consent Decree but not paid by CFI.

## XIV.  NOTICES

85.     Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree in accordance with Section VII, Reporting Requirements, they shall be made electronically, unless otherwise requested by either FDEP and EPA, and addressed as follows:

To the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Re: DOJ No.  90-7-1-08388/5

| by email | by fax | by regular mail or post office express mail | by private overnight service |
|---|---|---|---|
| c/o Deborah.Reyher@usdoj.gov | (202) 514-4113 or 514-0097 | Box 7611 Ben Franklin Station Washington, D.C. 20044-7611 | 601 D Street, NW., 2nd floor Washington, D.C. 20004 |

United States Attorney for the Middle District of FL
 Middle District of FL
400 N. Tampa Street, Suite 3200
Tampa, FL 33602
Phone: (813) 274-6000
Fax : (813) 274-6358

and to EPA, below.

To EPA:

Bethany Russell and Joan RedleafDurbin
U.S. Environmental Protection Agency, Region 4
61 Forsyth Street, S.W.
Atlanta, GA 30303-8960
Phone: (404) 562-8542
Fax: (404) 562-8078
russell.bethany@epa.gov
redleaf-durbin.joan@epa.gov

Kathryn P. Caballero
Office of Civil Enforcement
Mail Code 2249A
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Ave., NW
Washington, D.C. 20460
Phone: (202) 564-1849
Fax: (202) 564-0019
caballero.kathryn@epa.gov

To FDEP:

Tim Bahr, Administrator
Hazardous Waste Regulation Section M.S. 4560
Department of Environmental Protection
2600 Blair Stone Road
Tallahassee, FL 32399-2400

tim.bahr@dep.state.fl.us

James Dregne, Hazardous Waste Manager
Department of Environmental Protection
13051 North Telecom Parkway
Temple Terrace, FL 33637-0926
james.dregne@dep.state.fl.us

John A. Coates, P.E., Chief
Bureau of Mining and Minerals Regulation
FL DEP, Division of Water Resource Management
2051 East Dirac Drive
Tallahassee, FL 32312
john.coates@dep.state.fl.us

Sam Zamani, P.E., Program Administrator
Phosphate Management Section
FL DEP, Division of Water Resource Management
13051 North Telecom Parkway
Temple Terrace, FL 33637-0926
sam.zamani@dep.state.fl.us

-and with respect to notices pertaining to Financial Assurance:

Robert Stewart
USEPA - Region 4
Atlanta Federal Center - 11th Floor
61 Forsyth Street, SW
Atlanta, GA 30303-8960

Debbie Jourdan
Superfund & RCRA Records Program Manager
USEPA - Region 4
Atlanta Federal Center - 11th Floor
61 Forsyth Street, SW
Atlanta, GA 30303-8960

To CFI:

Herschel Morris
CF Industries, Inc.
Post Office Drawer L
Plant City, FL 33564-9007
Michael P. Petrovich, Esquire
Hopping Green & Sams, P.A.

- 41 -

123 South Calhoun Street
Tallahassee, FL 32301

Henry C. Eisenberg
Skadden Arps Slate Meagher & Flom
1440 New York Avenue, N.W.
Washington, D.C. 20005-2111

86. Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

87. Notices submitted pursuant to this Section shall be deemed submitted upon electronic transmission, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XV. EFFECTIVE DATE

88. The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket; provided, however, that CFI hereby agrees that it shall be bound from the date of its execution of this Decree to perform obligations scheduled in this Consent Decree to occur prior to the Effective Date.

## XVI. RETENTION OF JURISDICTION

89. The Court shall retain jurisdiction over this case until termination of this Consent Decree, pursuant to Section XVIII (Termination), for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections X (Dispute Resolution) and XVII (Modification), or effectuating or enforcing compliance with the terms of this Decree.

- 42 -

## XVII. MODIFICATION

90.     Except as specifically provided for herein, there shall be no modifications or
amendments of this Consent Decree without the written agreement of the Parties to this Consent
Decree. Changes to provisions of this Consent Decree that expressly allow for change upon
written agreement, and changes to the provisions of Appendices 1 through 8 hereto, or other
modifications that do not constitute a material change to this Decree, may be made without
approval by the Court upon written agreement between CFI and EPA, after consultation with
FDEP, and upon execution shall become enforceable under this Consent Decree and shall be
filed with the Court. Any other modifications agreed to by the Parties shall be effective only
upon approval by the Court. A Party's refusal to agree to a modification of this Consent Decree
shall not be subject to dispute resolution or judicial review.

91.     In the event that a transferee of property under Section II of this Consent Decree
should desire to become a party to this Consent Decree and subject to all its terms and
provisions, it may do so upon written approval of the United States pursuant to Section II
(Applicability) of this Consent Decree, in which event a supplemental signature page will be
affixed to this Consent Decree and filed with the Court.

## XVIII. TERMINATION

92.     Periodic Review of Work Status. At least once every three (3) years, and more
often if the Parties so agree, the Parties shall meet to review the status of the Work and to
evaluate whether discrete portions of the Work have either been completed or may be
accomplished and supervised under an EPA or FDEP administrative order or permit. Any
agreement of the Parties shall be memorialized in a written modification to this Consent Decree
pursuant to Section XVII (Modification) and shall not require judicial approval. If the Parties

- 43 -

agree that such modifications allow this Consent Decree to be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Consent Decree. The Parties' inability to reach an agreement relating to modification or termination under this Paragraph shall not be subject to dispute resolution or judicial review.

93.     Completion of Work. Within ninety (90) Days after CFI concludes that all Work required under this Consent Decree has been fully performed, CFI, if EPA and/or FDEP so requests, shall schedule and conduct an inspection of the facility to be attended by EPA, FDEP and CFI at a mutually agreeable time. Following the inspection, and correction of any problems or deficiencies noted by EPA, after consultation with FDEP, CFI shall submit one or more written reports by a third party registered professional engineer, in the relevant technical field, certifying compliance with Section V (Compliance Requirements) of this Consent Decree that the Work has been completed in full satisfaction of the requirements of this Consent Decree. The reports shall indicate the case name and civil action number, and shall be submitted, together with a request for Acknowledgment of Completion, in accordance with Paragraph 40, Section VII (Reporting Requirements) of this Consent Decree.

94.     If, after review of the written report(s) and certification and consultation with FDEP, EPA determines that any portion of the Work has not been completed in accordance with this Consent Decree, EPA will notify CFI in writing of the activity(ies) and/or obligation(s) that must be undertaken to complete the Work. EPA will set forth in the notice a schedule for performance of the activity(ies) and/or obligation(s) required under the Consent Decree, or will require CFI to submit a schedule for EPA approval pursuant to Section V (Compliance Requirements) of this Consent Decree. CFI shall perform all activities described in the notice in accordance with the specifications and schedules established therein, subject to CFI's right to

- 44 -

invoke the dispute resolution procedures set forth in Section X (Dispute Resolution) of this Consent Decree.

95.     If EPA concludes, based on the initial or any subsequent request for an Acknowledgment of Completion by CFI, and after reasonable opportunity for review and comment by FDEP, that the Work has been fully performed in accordance with this Consent Decree, EPA will so notify CFI in writing, which notice shall constitute the Acknowledgment of Completion.

96.     Termination. After CFI has completed the requirements set forth in Paragraphs 92 and 93 of this Section, has obtained an Acknowledgment of Completion, has complied with all other requirements of this Consent Decree, and has paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, CFI may serve upon the United States and FDEP a Request for Termination, stating that CFI has satisfied those requirements, together with all necessary supporting documentation.

97.     Following receipt by the United States and FDEP of CFI's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether CFI has satisfactorily complied with the requirements for termination of this Consent Decree. If the United States, after consultation with FDEP, agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

98.     If the United States, after consultation with FDEP, does not agree that the Decree may be terminated, CFI may invoke Dispute Resolution under Section X of this Decree. However, all time periods and deadlines established under Section X (Dispute Resolution) shall be extended by sixty (60) Days, or more by the agreement of the Parties.

- 45 -

## XIX. PUBLIC PARTICIPATION

99.     This Consent Decree shall be lodged with the Court for a period of not less than

thirty (30) Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United

States reserves the right to withdraw or withhold its consent if the comments regarding the

Consent Decree disclose facts or considerations indicating that the Consent Decree is

inappropriate, improper, or inadequate. CFI consents to entry of this Consent Decree without

further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the

Court or to challenge any provision of the Decree, unless the United States has notified CFI in

writing that it no longer supports entry of the Decree.

## XX. SIGNATORIES/SERVICE

100.    Each undersigned representative of CFI, the Assistant Attorney General for the

Environment and Natural Resources Division of the Department of Justice, or his designee, and

the Secretary of the Florida Department of Environmental Protection certifies that he or she is

fully authorized to enter into the terms and conditions of this Consent Decree and to execute and

legally bind the Party he or she represents to this document.

101.    This Consent Decree may be signed in counterparts, and its validity shall not be

challenged on that basis. CFI agrees to accept service of process by mail with respect to all

matters arising under or relating to this Consent Decree and to waive the formal service

requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any

applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXI. INTEGRATION

102.    This Consent Decree and its Appendices constitute the final, complete, and

exclusive agreement and understanding among the Parties with respect to the settlement

embodied in the Decree and supersede all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. Other than the Appendices, which are attached to and incorporated in this Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXII. FINAL JUDGMENT

103.   Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, FDEP and CFI. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

## XXIII. APPENDICES

104.   The following Appendices are attached to and part of this Consent Decree:

Appendix 1 contains the following compliance requirements:

Attachment A (Site Assessment, Reporting, and Corrective Measures);

Attachment B (Groundwater and Zone of Discharge Requirements);

Attachment C (Phosphogypsum Stack System Construction and Operational Requirements);

Attachment D (Closure of Phosphogypsum Stacks/Stack Systems);

Attachment E (Imminent and Substantial Endangerment Diagnostic Requirements);

Attachment F (Definitions for Purpose of the Consent Decree);

Appendix 2 establishes Financial Assurance Requirements;

Appendix 3 is a Site Map of the CFI Facility;

Appendix 4 is the Facility Report;

Appendix 5 is CFI's current BMP Plan for Phosphoric Acid Product Handling and includes operational changes to reduce generation of MAP/DAP ammoniated wastes;

Appendix 6 is the Sulfuric Acid Plants Hazardous Waste Management Plan provided to EPA and FDEP on December 19, 2007;

Appendix 7 is a letter from CFI to FDEP, dated April 17, 2007, enclosing an April 16, 2007 Ardaman & Associates Assessment of Existing Perimeter Earthen Dikes at the Plant City Phosphate Complex; and

Appendix 8 is the Compliance Schedule (BMP and Project Implementation Schedule)

Dated and entered this 28 day of September, 2010.

UNITED STATES DISTRICT JUDGE
MIDDLE DISTRICT OF FLORIDA

WE HEREBY CONSENT to the entry of the Consent Decree in <u>United States et al. v. CF Industries, Inc.</u>, subject to the public notice requirements of 28 C.F.R. § 50.7.

FOR THE UNITED STATES OF AMERICA:

Date: 8/03/10

Robert G. Dreher
Acting Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

Date: 8/04/10

DEBORAH M. REYHER
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044
(202) 514-4113

WE HEREBY CONSENT to the entry of the Consent Decree in <u>United States et al. v. CF Industries, Inc.,</u> subject to the public notice requirements of 28 C.F.R. § 50.7.

FOR THE UNITED STATES OF AMERICA:

A. BRIAN ALBRITTON
United States Attorney
for the Middle District of FL

KENNETH STEGEBY
Assistant United States Attorney
USAO No. 112
400 N. Tampa Street, Suite 3200
Tampa, FL 33602
Phone: (813) 274-6303
Facsimile: (813) 274-6198
Email: <u>Kenneth.stegeby@usdoj.gov</u>

WE HEREBY CONSENT to the entry of the Consent Decree in <u>United States et al. v. CF Industries, Inc.</u>, subject to the public notice requirements of 28 C.F.R. § 50.7.

FOR THE UNITED STATES OF AMERICA:

DATE: 7/30/10

CYNTHIA GILES
Assistant Administrator
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency
Washington, D.C. 20460

DATE:

ADAM M. KUSHNER
Director, Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency
Washington, D.C. 20460

Date: 6/29/2010

A. STANLEY MEIBURG
Acting Regional Administrator
U.S. Environmental Protection Agency, Region 4
61 Forsyth Street, S.W.
Atlanta, GA 30303-8960

Date: 6/29/10

JOAN REDLEAF DURBIN
Senior Attorney
U.S. Environmental Protection Agency, Region 4
SNAFC, 13th Floor
61 Forsyth Street, S.W.
Atlanta, GA 30303-8960

52

WE HEREBY CONSENT to the entry of the Consent Decree in <u>United States et al. v. CF Industries, Inc.</u>, subject to the public notice requirements of 28 C.F.R. § 50.7.

FOR FLORIDA DEPARTMENT OF
ENVIRONMENTAL PROTECTION:

DATE: 7/16/10

MIMI DREW
Deputy Secretary, Regulatory Programs
Florida Department of Environmental Protection
3900 Commonwealth Blvd., M.S. 15
Tallahassee, FL 32399-3000

FOR CF INDUSTRIES, INC.:

DATE: August 4, 2010

_A.R. Wilson_
STEPHEN R. WILSON
President and Chief Executive Officer
CF Industries, Inc.