IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| and | ) | |
| FLORIDA DEPARTMENT OF | ) | |
| ENVIRONMENTAL PROTECTION , | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No.  8:10-CV-1756T24-SCB-EAJ |
| v. | ) | |
| | ) | |
| CF INDUSTRIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MODIFICATION OF CONSENT DECREE

The Consent Decree entered in this case on September 28, 2010 (Consent Decree or Decree), is hereby modified this 5th day of March, 2014 (the Modification), by Plaintiffs the United States, on behalf of the U.S. Environmental Protection Agency (EPA), and the Florida Department of Environmental Protection (FDEP), and Defendant CF Industries, Inc. (CFI), to effectuate the transfer of CFI's obligations under the Consent Decree, to Mosaic Fertilizer, L.L.C. (Mosaic Fertilizer), pursuant to Paragraphs 5 and 28 and Section XVII (Modification) of the Consent Decree, and Paragraph 32(b) of Appendix 2 to the Consent Decree (hereinafter Appendix 2).  The above-named entities (hereinafter collectively the Parties) agree as follows:

WHEREAS, the United States of America and Florida Department of Environmental Protection (FDEP) filed a Complaint in this matter on August 6, 2010, alleging certain violations by CFI of Sections 3004 and 3005 of the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. §§ 6924 & 6925,  and regulations promulgated thereunder, and Sections 403.721 and

403.722, F.S. of the Florida Resource Recovery and Management Act, and the regulations

promulgated thereunder, at CFI's Plant City facility in Plant City, Florida (the Facility);

WHEREAS CFI has resolved the violations alleged in the Complaint in the Consent

Decree entered in this case on September 28, 2010, and is currently subject to and operating its

Facility under ongoing requirements of the Consent Decree and its Appendices;

WHEREAS, CFI, its parent company CF Industries Holding, Inc. and The Mosaic

Company, the parent company of Mosaic Fertilizer have entered into an Asset Purchase

Agreement (APA) dated October 28, 2013, in which the parties to the APA have agreed that on

the contemplated Closing Date (as set forth in Section 3.1 of the APA) CFI shall assign, convey,

transfer and deliver to The Mosaic Company (and/or such Affiliates as defined in the APA and

as designated by The Mosaic Company in Section 2.1 of the APA) the Purchased Assets (as

defined in the APA), including the CFI Facility, and The Mosaic Company intends to designate

that the CFI Facility will be directly purchased by Mosaic Fertilizer, LLC;

WHEREAS, as part of the APA, The Mosaic Company (and/or such Affiliates as defined

in the APA and as designated by The Mosaic Company in Section 2.1 of the APA), also agrees

to assume all Environmental Liabilities as defined in the APA, including the Consent Decree;

WHEREAS, CFI and Mosaic Fertilizer entered into an Agreement[1] on January 7, 2014,

in which the parties thereto agreed that, upon the effective date of that Agreement, Mosaic

Fertilizer shall be substituted for CFI as a party to the Consent Decree, be bound by the terms of

---

[1] Agreement By and Between CF Industries, Inc. ("CFI") and Mosaic Fertilizer, LLC ("Mosaic") to Transfer CFI's Obligations Under the RCRA Consent Decree to Mosaic, Dated as of January 7, 2014 ) (hereinafter called "Agreement").

the Decree and undertake the obligations of the Decree, including, without limitation, the

obligation to provide Financial Assurance pursuant Paragraph 26 of the Consent Decree and

Appendix 2;

WHEREAS, Paragraph 5 of the Consent Decree specifies that no transfer of ownership or

operation of the Facility shall relieve CFI of its obligation to ensure that the terms of the Decree

are implemented, unless: (1) the transferee agrees in writing to undertake the obligations required

by this Decree and to be substituted for CFI as a Party to the Decree and thus be bound by the

terms thereof; and (2) the United States, after consultation with FDEP, consents in writing to

relieve CFI of its obligations pursuant to Section XVII of the Consent Decree (Modification);

WHEREAS, Section IX of Appendix 2 states that no transfer of ownership or operation

of the Facility shall relieve CFI of its Financial Assurance obligation under the Consent Decree

except as provided by Section IX of Appendix 2 and Section II of the Consent Decree;

WHEREAS, Paragraph 91 of the Consent Decree requires a supplemental signature page

to be appended to the Consent Decree following the United States' written approval of a transfer,

in order for a transferee to become a party to the Consent Decree; and

WHEREAS, Mosaic Fertilizer has provided the United States with information requested

to evaluate its ability and willingness to comply with the Consent Decree following the proposed

transfer, and the United States has reviewed that information and consulted with FDEP;

NOW, THEREFORE, with the consent of the Parties,

IT IS HEREBY AGREED as follows:

1. <u>Relationship to Consent Decree</u>. Nothing in this Modification shall be deemed to modify any of the terms and conditions of the Consent Decree except to substitute Mosaic Fertilizer for CFI and to modify certain provisions of Appendix 2 (including Attachments thereto) as set forth herein, as of the Effective Date of this Modification, which shall not take place until the actual Closing Date of Mosaic Fertilizer's acquisition of the CFI Facility (whether or not the date contemplated in the APA). This Modification is intended to effectuate CFI's transfer obligations under Section II of the Consent Decree and shall be construed consistently with the Consent Decree. Capitalized terms herein that are defined in the Consent Decree shall have the same meaning herein as in the Consent Decree.

2. <u>Certification by CFI</u>. CFI hereby certifies that it has complied with all the requirements of Paragraph 5 of the Consent Decree and Paragraph 32(b) of Appendix 2 for the transfer of the Facility to Mosaic Fertilizer, and has requested the approval of the United States in consultation with FDEP pursuant to Paragraphs 5 and 28 of the Consent Decree and Paragraph 32(b) of Appendix 2

3. <u>Certification and Consent by Mosaic Fertilizer</u>. Mosaic Fertilizer hereby certifies that it has provided all information requested by the United States in order to evaluate CFI's request for approval of the transfer of CFI's obligations under the Consent Decree to Mosaic Fertilizer; the substitution of Mosaic Fertilizer for CFI as the party subject to the Consent Decree; and the release of CFI from any further obligations pursuant to the Consent Decree, and that it consents to the jurisdiction of this Court.

4. Request for Transfer of Consent Decree Obligations and Consent by Mosaic. CFI hereby requests to assign its obligations under the Consent Decree to Mosaic Fertilizer, and Mosaic Fertilizer hereby agrees to undertake the obligations required by the Decree and to be substituted for CFI as a Party to the Decree and thus be bound by the terms thereof as modified below, and provides herewith a signed signature page to be appended to the Consent Decree upon the Effective Date of this Modification.

5. United States' Approval of Transfer With Conditions. Pursuant to Paragraphs 5 and 28(b) of the Consent Decree and Paragraph 32(b) of Appendix 2, the United States after consultation with FDEP approves the transfer of CFI's obligations under the Consent Decree to Mosaic Fertilizer, and consents to the substitution of Mosaic Fertilizer for CFI in the Consent Decree, subject to the following conditions:

    a. Mosaic Fertilizer by the Closing Date shall establish and fund a trust fund (Mosaic Trust) for Financial Assurance for Phosphogypsum Stack System Closure and Long Term Care as required by the Consent Decree and in compliance with Appendix 2, in an amount at least equal to that of the trust fund heretofore established by CFI pursuant to Appendix 2 (CFI Trust) as of the Closing Date, and in accordance with Paragraph 8, below, shall provide written evidence of such funding to EPA and FDEP;

    b. Mosaic Fertilizer shall be bound by the Financial Assurance requirements of Paragraph 26 of the Consent Decree and Appendix 2, with the following modifications:

i. Mosaic Fertilizer shall not seek to terminate the Mosaic Trust, or substitute alternate Financial Assurance for the Mosaic Trust pursuant to Paragraph 11(b)-(d) of Appendix 2, prior to March 1, 2015. Thereafter Mosaic may seek to substitute alternate Financial Assurance, subject to the limitation of subparagraph (ii) below, under the terms set forth in, and subject to any approvals required by, Appendix 2 and 40 C.F.R. §§ 264.143(a)(8), (9) and (11), and 40 C.F.R. §§ 264.145 (a)(8), (9), and (12).

ii. Mosaic Fertilizer shall not substitute or seek to provide alternate Financial Assurance for Phosphogypsum Stack Closure and Long Term Care at the Facility through the use of a Self-Assurance Mechanism under Appendix 2; and

iii. With respect to the requirements of Paragraph 11(a)(2) of Appendix 2, Mosaic Fertilizer shall use the exact wording for the Mosaic Trust provided in Attachment A to this Modification.

iv. Mosaic Fertilizer shall establish Financial Assurance for Third-Party Liability as required by Appendix 2, except that Mosaic Fertilizer in the event that it uses a certificate of insurance or a letter of credit, shall use the exact wording provided in Attachments B and C to this Modification.

6. <u>Release of CFI from Consent Decree Obligations</u>. Notwithstanding the expectations of CFI and Mosaic under Condition 6.10 of the APA regarding the timing of the release of the CFI Trust, the CFI Trust may not be terminated, and CFI will not be relieved of its obligations under the Consent Decree, until Plaintiffs are provided with written evidence that the Mosaic Trust has been fully funded to replace the CFI Trust, as required by Paragraph 32(b) of Appendix 2 and Paragraph 8, below. Only then will this Modification constitute the written consent required to relieve CFI of its obligations under the Consent Decree pursuant to Paragraph 5 and Section XVII of the Consent Decree (Modification) and Paragraph 32(b) of Appendix 2. Following (i) the receipt of written evidence pursuant to Paragraph 8, below, that the Mosaic Trust has been fully funded to replace the CFI Trust in accordance with Appendix 2 of the Consent Decree and this Modification, and (ii) this Modification becoming effective, as set forth in Paragraph 7, CFI shall be released from its obligations under the Consent Decree and shall no longer be considered a party to the Consent Decree. At such time, the United States and FDEP shall submit a written direction to the Trustee of the CFI Trust authorizing the release of the funds in the CFI Trust as directed by CFI pursuant to the terms of the CFI Trust.

7. <u>Effective Date</u>. This Modification shall become effective on the actual Closing Date of Mosaic Fertilizer's acquisition of the CFI Facility (whether or not the date contemplated in the APA), and provided that the Mosaic Trust is fully funded by Mosaic Fertilizer at that time. If the actual Closing Date does not take place by June 30, 2014, or if the Mosaic Trust is not fully funded on the Closing Date, then this Modification shall be null and void and CFI shall retain all its obligations under the Consent Decree.

8. <u>Documentation of Closing Date and Full Funding of Mosaic Trust</u>. Within five (5) Days of the Closing Date, Mosaic Fertilizer and CFI shall provide documentation of the closing and of the full funding of the Mosaic Trust to the United States. The United States shall then provide confirmation to the Court that this Modification has become effective.

9. <u>Counterparts</u>. This Modification may be executed in one or more counterparts, each of which shall be deemed to be an original for all purposes and all of which together shall constitute the same instrument. Parties may sign by facsimile, which will be treated as an original.

10. <u>Attachments</u>. The following Attachments are appended hereto and made a part of this Modification and of Appendix 2:

    a. Attachment A – Required Wording for Mosaic Trust

    b. Attachment B – Required Wording for Third Party Liability Letter of Credit

    c. Attachment C – Required Wording for Third Party Liability Certificate of Insurance

    d. Attachment D – Mosaic Fertilizer signature page to be appended to the Consent Decree upon the Effective Date of this Modification

WE HEREBY CONSENT to the entry of the Modification of the Consent Decree in <u>United States et al. v. CF Industries, Inc.</u>

FOR THE UNITED STATES OF AMERICA:

Date: 3/7/14

Robert Dreher
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

Date: 3/10/14

DEBORAH M. REYHER
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044
(202) 514-4113

WE HEREBY CONSENT to the entry of the Modification of the Consent Decree in <u>United States et al. v. CF Industries, Inc.</u>

FOR THE UNITED STATES OF AMERICA:

DATE:

HEATHER McTEER TONEY
Regional Administrator
U.S.  Environmental Protection Agency, Region 4
61 Forsyth Street, S.W.
Atlanta, GA 30303-8960

DATE: 3|4|14

JOAN REDLEAF DURBIN
Senior Attorney
U.S.  Environmental Protection Agency, Region 4
61 Forsyth Street, S.W.
Atlanta, GA 30303-8960

WE HEREBY CONSENT to the entry of the Modification of the Consent Decree in United States et al. v. CF Industries, Inc.

FLORIDA DEPARTMENT OF ENVIRONMENTAL PROTECTION:

Date: 3/7/14

Jeff Littlejohn, P.E.
Deputy Secretary for Regulatory Programs
Florida Department of Environmental Protection
3900 Commonwealth Boulevard MS 15
Tallahassee, Florida 32399

MATTHEW Z. LEOPOLD
DEPUTY GENERAL COUNSEL,

Date: 3/6/14

Jonathan Alden, Senior Attorney
Office of General Counsel
Florida Department of Environmental Protection
3900 Commonwealth Boulevard MS 35
Tallahassee, Florida 32399

FOR CF INDUSTRIES, INC.:

DATE: February 28, 2014

_Douglas C. Barnard_

Douglas C. Barnard
Senior Vice President, General
   Counsel, and Secretary
CF Industries, Inc.

CFI/Mosaic Fertilizer Transaction: CD Modification

FOR MOSAIC FERTILIZER, LLC:

Date: 2/28/14

Richard Mack
Executive Vice President and Corporate Secretary
Mosaic Fertilizer, LLC

# ATTACHMENT A

# TRUST AGREEMENT

**Instructions:** The trust agreement for a trust fund, as specified in Appendix 2 of the Consent Decree, must be worded as follows, except that instructions in brackets are to be replaced with the relevant information and the brackets deleted. The Grantor may enter into an addendum to the Trust Agreement ("Addendum") required by the Trustee, provided that: (1) the Addendum supplements and does not contain terms that conflict, supersede, revise or alter the terms of the Trust Agreement (or the requirements of Appendix 2), and (2) the Addendum is approved by EPA in advance, such approval is within EPA's unreviewable discretion.

## Trust Agreement

Trust Agreement, the "Agreement," entered into as of [date] by and between Mosaic Fertilizer, LLC, "Mosaic Fertilizer," a Delaware limited liability company, the "Grantor," and Wells Fargo Bank, N.A., a national bank, the "Trustee."

Whereas, the United States Environmental Protection Agency, "EPA," an agency of the United States Government, and the Florida Department of Environmental Protection, "FDEP" have entered into a Consent Decree with CF Industries Inc., "CF," requiring CF to provide assurance that funds will be available when needed for Phosphogypsum Stack System Closure and/or Long Term Care of its Facility covered under the Consent Decree entered by the United States District Court for the Middle District of Florida in United States of America and Florida Department of Environmental Protection v. CF Industries, Inc., Civil Action No. 8:10-cv-01756-SCB-EAJ, on September 28, 2010, "Consent Decree."

Whereas, Mosaic Fertilizer was designated as the Buyer on [insert date] of the Facility subject to the Consent Decree and shall purchase, acquire and take assignment and delivery of, all of the right, title and interest in and to the Facility subject to the RCRA Consent Decree per the terms of the Asset Purchase Agreement among CF Industries Holdings, Inc., CF Industries, Inc., and The Mosaic Company, dated October 28, 2013;

Whereas, CF and Mosaic Fertilizer entered into an Agreement to transfer CFI's obligations under the Consent Decree to Mosaic Fertilizer, dated as of January 7, 2014, in which the parties agreed that Mosaic Fertilizer, LLC shall be substituted for CFI as a party to the Consent Decree, be bound by the terms of the Consent Decree and undertake the obligations of the Consent Decree as required by the Consent Decree, including, without limitation, the obligation to provide Financial Assurance pursuant to Appendix 2 of the Consent Decree;

Whereas, Mosaic Fertilizer became a party to the Consent Decree on [insert effective date of Transfer Agreement];

Whereas, the Grantor has elected to establish a trust to provide all or part of such financial assurance for the facilities identified herein,

Whereas, the Grantor, acting through its duly authorized officers, has selected the Trustee to be the trustee under this agreement, and the Trustee is willing to act as trustee,

Now, Therefore, the Grantor and the Trustee agree as follows:

Section 1. Definitions. As used in this Agreement:

(a) The term "Grantor" means the owner or operator who enters into this Agreement and any successors or assigns of the Grantor.

(b) The term "Trustee" means the Trustee who enters into this Agreement and any successor Trustee.

Section 2. Identification of Facilities and Cost Estimates. This Agreement pertains to the facilities and cost estimates identified on attached Schedule A [on Schedule A, for each facility list the EPA and FDEP Identification Number, name, address, and the current Phosphogypsum Stack System Closure and/or Long Term Care cost estimates, or portions thereof, for which financial assurance is demonstrated by this Agreement].

Section 3. Establishment of Fund. The Grantor and the Trustee hereby establish a trust fund, the "Fund," for the benefit of EPA and FDEP. The Grantor and the Trustee intend that no third party have access to the Fund except as herein provided. The Fund is established initially as consisting of the property, which is acceptable to the Trustee, described in Schedule B attached hereto. Such property and any other property subsequently transferred to the Trustee is referred to as the Fund, together with all earnings and profits thereon, less any payments or distributions made by the Trustee pursuant to this Agreement. The Fund shall be held by the Trustee, IN TRUST, as hereinafter provided. The Trustee shall not be responsible nor shall it undertake any responsibility for the amount or adequacy of, nor any duty to collect from the Grantor, any payments necessary to discharge any liabilities of the Grantor established by EPA and FDEP.

Section 4. Payment for Phosphogypsum Stack System Closure and Long Term Care. The Trustee shall make payments from the Fund only as directed in writing by the appropriate EPA Regional Administrator and/or FDEP Secretary in accordance with Section 14, to provide for reimbursements to the Grantor or other persons from the Fund for the payment of the costs of Phosphogypsum Stack System Closure and/or Long Term Care of the facilities covered by this Agreement. In addition, the Trustee shall refund to the Grantor only such amounts as the EPA Regional Administrator and/or FDEP Secretary specifies in writing. Upon refund, such funds shall no longer constitute part of the Fund as defined herein.

Section 5. Payments Comprising the Fund. Payments made to the Trustee for the Fund shall consist of cash or securities acceptable to the Trustee.

Section 6. Trustee Management. The Trustee shall invest and reinvest the principal and income of the Fund and keep the Fund invested as a single fund, without distinction between principal and income, in accordance with general investment policies and guidelines which the Grantor may communicate in writing to the Trustee from time to time, subject, however, to the provisions of this Section. In investing, reinvesting, exchanging, selling, and managing the Fund, the Trustee shall discharge his/her duties with respect to the trust fund solely in the interest of the beneficiary and with the care, skill, prudence, and diligence under the circumstances then prevailing which persons of prudence, acting in a like capacity and familiar with such matters,

would use in the conduct of an enterprise of a like character and with like aims; except that:

(i) Securities or other obligations of the Grantor, or any other owner or operator of the facilities, or any of their affiliates as defined in the Investment Company Act of 1940, as amended, 15 U.S.C. 80a-2.(a), shall not be acquired or held, unless they are securities or other obligations of the Federal or a State government;

(ii) The Trustee is authorized to invest the Fund in time or demand deposits of the Trustee, to the extent insured by an agency of the Federal or State government; and

(iii) The Trustee is authorized to hold cash awaiting investment or distribution un-invested for a reasonable time and without liability for the payment of interest thereon.

Section 7. Commingling and Investment. The Trustee is expressly authorized in its discretion:

(a) To transfer from time to time any or all of the assets of the Fund to any common, commingled, or collective trust fund created by the Trustee in which the Fund is eligible to participate, subject to all of the provisions thereof, to be commingled with the assets of other trusts participating therein; and

(b) To purchase shares in any investment company registered under the Investment Company Act of 1940, 15 U.S.C. 80a-1 et seq., including one which may be created, managed, underwritten, or to which investment advice is rendered or the shares of which are sold by the Trustee. The Trustee may vote such shares in its discretion.

Section 8. Express powers of Trustee. Without in any way limiting the powers and discretions conferred upon the Trustee by the other provisions of this Agreement or by law, the Trustee is expressly authorized and empowered:

(a) To sell, exchange, convey, transfer, or otherwise dispose of any property held by it, by public or private sale. No person dealing with the Trustee shall be bound to see to the application of the purchase money or to inquire into the validity or expediency of any such sale or other disposition;

(b) To make, execute, acknowledge, and deliver any and all documents of transfer and conveyance and any and all other instruments that may be necessary or appropriate to carry out the powers herein granted;

(c) To register any securities held in the Fund in its own name or in the name of a nominee and to hold any security in bearer form or in book entry, or to combine certificates representing such securities with certificates of the same issue held by the Trustee in other fiduciary capacities, or to deposit or arrange for the deposit of such securities in a qualified central depositary even though, when so deposited, such securities may be merged and held in bulk in the name of the nominee of such depositary with other securities deposited therein by another person, or to deposit or arrange for the deposit of any securities issued by the United States Government, or any agency or instrumentality thereof, with a Federal Reserve bank, but the books and records of

the Trustee shall at all times show that all such securities are part of the Fund;

(d) To deposit any cash in the Fund in interest-bearing accounts maintained or savings certificates issued by the Trustee, in its separate corporate capacity, or in any other banking institution affiliated with the Trustee, to the extent insured by an agency of the Federal or State government; and

(e) To compromise or otherwise adjust all claims in favor of or against the Fund.

Section 9. Taxes and Expenses. All taxes of any kind that may be assessed or levied against or in respect of the Fund and all brokerage commissions incurred by the Fund shall be paid from the Fund. All other expenses incurred by the Trustee in connection with the administration of this Trust, including fees for legal services rendered to the Trustee, the compensation of the Trustee to the extent not paid directly by the Grantor, and all other proper charges and disbursements of the Trustee shall be paid from the Fund.

Section 10. Semiannual Accounting. The Trustee shall, every six (6) months from the date of establishment of the Fund, furnish to the Grantor and to the appropriate EPA Regional Administrator (or the designee) and FDEP Secretary (or the designee), a statement confirming the value of the Trust and a cumulative and calendar year accounting of the amount the Trustee has released from the Fund for reimbursement of Phosphogypsum Stack System Closure and Long Term Care expenditures. The Trustee shall furnish additional valuation statements and accountings of the released funds to the Grantor and to the appropriate EPA Regional Administrator and FDEP Secretary, as instructed in writing by the EPA Regional Administrator or FDEP Secretary. Any securities in the Fund shall be valued at market value as of no more than sixty (60) days prior to the anniversary date of establishment of the Fund or sixty (60) days prior to a semi-annual accounting. The failure of the Grantor to object in writing to the Trustee within ninety (90) days after the statement has been furnished to the Grantor and the EPA Regional Administrator and the FDEP Secretary shall constitute a conclusively binding assent by the Grantor, barring the Grantor from asserting any claim or liability against the Trustee with respect to matters disclosed in the statement.

Section 11. Advice of Counsel. The Trustee may from time to time consult with counsel, who may be counsel to the Grantor, with respect to any question arising as to the construction of this Agreement or any action to be taken hereunder. The Trustee shall be fully protected, to the extent permitted by law, in acting upon the advice of counsel.

Section 12. Trustee Compensation. The Trustee shall be entitled to reasonable compensation for its services as agreed upon in writing from time to time with the Grantor.

Section 13. Successor Trustee. The Trustee may resign or the Grantor may replace the Trustee, but such resignation or replacement shall not be effective until the Grantor has appointed a successor trustee and this successor accepts the appointment. The successor trustee shall have the same powers and duties as those conferred upon the Trustee hereunder. Upon the successor trustee's acceptance of the appointment, the Trustee shall assign, transfer, and pay over to the successor trustee the funds and properties then constituting the Fund. If for any reason the Grantor cannot or does not act in the event of the resignation of the Trustee, the Trustee may

apply to a court of competent jurisdiction for the appointment of a successor trustee or for instructions. The successor trustee shall specify the date on which it assumes administration of the trust in a writing sent to the Grantor, the EPA Regional Administrator, and the FDEP Secretary, and the present Trustee by certified mail 10 days before such change becomes effective. Any expenses incurred by the Trustee as a result of any of the acts contemplated by this Section shall be paid as provided in Section 9.

Section 14. Instructions to the Trustee.

(a) All orders, requests, and instructions by the Grantor to the Trustee shall be in writing, signed by such persons as are designated in the attached Exhibit A or such other designees as the Grantor may designate by amendment to Exhibit A. The Trustee shall be fully protected in acting without inquiry in accordance with the Grantor's orders, requests, and instructions.

(b) All orders, requests, and instructions by the EPA Regional Administrator and the FDEP Secretary to the Trustee shall be in writing, signed by both the appropriate EPA Regional Administrator and FDEP Secretary, unless otherwise indicated in instructions to the Trustee as signed by both the EPA Regional Administrator and the FDEP Secretary. Initial instructions by the EPA Regional Administrator and the FDEP Secretary to the Trustee are attached as Exhibit B. New, revised or amended instructions by the EPA Regional Administrator and the FDEP Secretary to the Trustee will be dated and appended hereto in this Exhibit and shall be designated Exhibit B followed by a numeric designation (e.g., Exhibit B-1, Exhibit B-2). The Trustee shall act and shall be fully protected in acting in accordance with the EPA Regional Administrator's and/or the FDEP Secretary's orders, requests, and instructions.

(c) The Trustee shall have the right to assume, in the absence of written notice to the contrary, that no event constituting a change or a termination of the authority of any person to act on behalf of the Grantor, EPA or FDEP hereunder has occurred. The Trustee shall have no duty to act in the absence of such orders, requests, and instructions from the Grantor, EPA and/or the FDEP, except as provided for herein and found in Exhibit B.

Section 15. Notice of Nonpayment. The Trustee shall notify the Grantor, the appropriate EPA Regional Administrator and the FDEP Secretary, by certified mail within ten (10) days following the expiration of the thirty (30)-day period after the anniversary of the establishment of the Trust, if no payment is received from the Grantor during that period. After the pay-in period is completed, the Trustee shall not be required to send a notice of nonpayment.

Section 16. Amendment of Agreement. This Agreement may be amended by an instrument in writing executed by the Grantor, the Trustee, the appropriate EPA Regional Administrator, and the FDEP Secretary, or by the Trustee, the appropriate EPA Regional Administrator, and the FDEP Secretary if the Grantor ceases to exist.

Section 17. Irrevocability and Termination. Subject to the right of the parties to amend this Agreement as provided in Section 16, this Trust shall be irrevocable and shall continue until terminated at the written agreement of the Grantor, the Trustee, the EPA Regional Administrator, and the FDEP Secretary, or by the Trustee, the EPA Regional Administrator, and the FDEP Secretary if the Grantor ceases to exist. Upon termination of the Trust, all remaining trust

property, less final trust administration expenses, shall be delivered to the Grantor.

Section 18. Immunity and Indemnification. The Trustee shall not incur personal liability of any nature in connection with any act or omission, made in good faith, in the administration of this Trust, or in carrying out any directions by the Grantor, the EPA Regional Administrator and/or the FDEP Secretary issued in accordance with this Agreement. The Trustee shall be indemnified and saved harmless by the Grantor or from the Trust Fund, or both, from and against any personal liability to which the Trustee may be subjected by reason of any act or conduct in its official capacity, including all expenses reasonably incurred in its defense in the event the Grantor fails to provide such defense.

Section 19. Choice of Law. This Agreement shall be administered, construed, and enforced according to the laws of the State of Florida.

Section 20. Interpretation. As used in this Agreement, words in the singular include the plural and words in the plural include the singular. Whenever the terms "EPA Regional Administrator" and "FDEP Secretary" are used, they shall be construed to include the term "or his/her designee." Additionally, the term "Regional Administrator" as referenced in this Trust Agreement shall also include the Assistant Administrator of the EPA Office of Enforcement and Compliance Assurance or his/her designee. The descriptive headings for each Section of this Agreement shall not affect the interpretation or the legal efficacy of this Agreement.

In Witness Whereof the parties have caused this Agreement to be executed by their respective officers duly authorized and their corporate seals to be hereunto affixed and attested as of the date first above written: The parties below certify that the wording of this Agreement is identical to the wording specified in Attachment A to the Consent Decree Modification[1] on [insert effective date of Consent Decree Modification].

[Signature of Grantor]

[Title]

Attest:

[Title]

[Seal]

[Signature of Trustee]

Attest:

[Title]

---

[1] Modification to United States of America and Florida Department of Environmental Protection v. CF Industries, Inc., Civil Action No. 8:10-cv-01756-SCB-EAJ (M.D. Fla. Sept. 28, 2010) on [insert effective date of Consent Decree Modification] ("Consent Decree Modification").

[Seal]

(2) The following is an example of the certification of acknowledgment which must accompany the trust agreement for a trust fund as specified Appendix 2 of the Consent Decree.

State of
_____

County of
_____

On this [date], before me personally came [owner or operator] to me known, who, being by me duly sworn, did depose and say that she/he resides at [address], that she/he is [title] of Mosaic Fertilizer, LLC, the limited liability company described in and which executed the above instrument; that she/he knows the seal of said limited liability company; that the seal affixed to such instrument is such seal; that it was so affixed by order of the Board of Managers of said limited liability company, and that she/he signed her/his name thereto by like order.

[Signature of Notary Public]

## Schedule A to Trust Fund Agreement

1.    Mosaic Fertilizer, LLC
Plant City, Florida Phosphate Complex
10608 Paul Buchman Highway
Plant City, Florida 33565
EPA Id: FLD046088829
Current Cost Estimate for Closure and Long/Term Care: $189,160,600.00

Schedule B to Trust Fund Agreement

Property Initially Contributed to the Trust Fund

1. Cash in the amount of at least $189,160,600.00.

<u>Exhibit A — Persons Designated by Grantor to Provide Instructions to Trustee</u>

Cris Barros,
Vice President and Treasurer
Mosaic Fertilizer, LLC
3033 Campus Dr, Suite E490, Plymouth, MN 55441
763.577.2715
cris.barros@mosaicco.com

Anthony T. Brausen,
Senior Vice President, Finance and Chief Accounting Officer
The Mosaic Company
3033 Campus Dr, Suite E490, Plymouth, MN 55441
763-577-2829
tony.brausen@mosaicco.com

# EXHIBIT B

## Instructions to Trustee for Release of Funds for Phosphogypsum Stack System Closure and/or Long Term Care [1,2]

The Trustee shall act and shall be fully protected in acting in accordance with written orders, requests, and instructions signed solely by either the EPA Regional Administrator or the FDEP Secretary,[3] where written instructions signed by both the EPA Regional Administrator and the FDEP Secretary have authorized either the EPA Regional Administrator or FDEP Secretary to act independently to provide such orders, requests, and instructions for reimbursements.

Each year, or more often as needed, for the purpose of providing reimbursements from the Fund, FDEP and EPA will jointly provide written instructions to the trustee specifying a cumulative "Reimbursable Amount" for the Plant City Facility. The Trustee shall reimburse the Grantor or other persons authorized to conduct Phosphogypsum Stack System Closure and/or Long Term Care as specified by the FDEP Secretary from the Fund for Phosphogypsum Stack System Closure and/or Long Term Care expenditures in such amounts as the FDEP Secretary shall direct, in writing, up to the Reimbursable Amount, without the need for written direction or concurrence by the EPA Regional Administrator. The initial Reimbursable Amount is $ 0.00.[4]

The Trustee may not release any amount from the Fund for expenditures over the Reimbursable Amount without joint instructions in writing by both the EPA Regional Administrator and FDEP Secretary.

The Trustee shall notify the EPA Regional Administrator if the Trustee receives directions, including those in writing, from the FDEP Secretary, to reimburse the Grantor or other persons specified by the FDEP Secretary from the Fund for expenditures in excess of the Reimbursable Amount.

Date: 3/4/2014

Heather McTeer Toney
Regional Administrator
U.S. EPA, Region 4

Date: 3/4/2014

John A. Coates, P.E., Assistant Director
Division of Waste Management
Florida Department of Environmental Protection

---

[1] These Instructions shall be effective as of the last date signed above. New, revised or amended instructions to the trustee will be appended to this Exhibit B and shall be designated Exhibit B followed by a numeric designation (e.g., Exhibit B-1, Exhibit B-2). In addition, each new, amended, or revised instruction shall be dated.

[2] The instructions in this Exhibit B apply so long as the Trustee has not received written notice from the EPA Regional Administrator and the FDEP Secretary that Section VI (Work Takeover) of the Consent Decree has been triggered. The EPA Regional Administrator and the FDEP Secretary will send additional written instructions to the Trustee in the event that Section VI (Work Takeover) of the Consent Decree has been triggered.

[3] Whenever the terms "FDEP Secretary" or "EPA Regional Administrator" are used, they shall be construed to include the phrase, "or his/her designee." Additionally, the term "Regional Administrator" as referenced in these instructions shall also include the Assistant Administrator of the EPA Office of Enforcement and Compliance Assurance or his/her designee.

[4] As the Grantor (or other authorized person) is not conducting Phosphogypsum Stack System Closure and/or Long Term Care at the Plant City facility, there is no set Reimbursable Amount as of March 2014.

<u>Exhibit C — Persons Designated by EPA and FDEP to Receive Notices from Trustee</u>

All notices, requests, demands and other communications from the Trustee to EPA and FDEP required under this Agreement shall be delivered to:

Bob Stewart, Financial Assurance
USEPA - Region 4
RCRA Division/ROEC Branch
Atlanta Federal Center - 10th Floor
61 Forsyth Street, SW
Atlanta, GA 30303

and

John Coates, P.E., Assistant Director
Division of Waste Management
Florida Department of Environmental Protection
2600 Blair Stone Road, MS 4500
Tallahassee, Florida 32399

# TRUST AGREEMENT ADDENDUM

This Trust Agreement Addendum dated as of _____ ("Addendum") is executed by and between Mosaic Fertilizer, LLC (the "Grantor") and Wells Fargo Bank, National Association as trustee (the "Trustee"), and relates to the Trust Agreement dated ____ (the "Trust Agreement) between the Grantor and the Trustee entered into in connection with the Consent Decree among the United States Environmental Protection Agency (the "EPA"), the Florida Department of Environmental Protection (the "FDEP") and the Grantor for the Site. Such Consent Decree provides that the Grantor shall provide assurance that funds will be available as and when needed for the performance of the work required by the Consent Decree, which assurance is being provided by execution of the Trust Agreement.

Nothing in this Trust Agreement Addendum shall be construed to contradict or supersede the terms of the Trust Agreement. In the event of any conflict between the Trust Agreement and the Addendum, the Trust Agreement shall control.

1. **Definition of "Fund".**

   The term "Fund" refers to the Trust Fund established in the Trust Agreement. The name of the Fund is the "Mosaic Plant City EPA and FDEP Trust".

2. **Tax Reporting.**

   The following provisions shall supplement Section 9 of the Trust Agreement with respect to taxes and tax reporting:

   (a) Tax Reporting. The Grantor agrees that, for tax reporting purposes, all interest or other taxable income earned from the investment of the funds in any tax year shall be taxable to the Grantor.

   (b) Certification of Tax Identification Number. The Grantor shall provide the Trustee and certified tax identification numbers by furnishing appropriate forms W-9 or W-8 and other forms and documents that the Trustee may reasonably request. The Grantor understands that if such tax reporting documentation is not so certified to the Trustee, the Trustee may be required by the Internal Revenue Code of 1986, as amended, to withhold a portion of any interest or other income earned on the investment of monies or other property held by the Trustee pursuant to the Trust Agreement.

3. **Compensation of the Trustee.**

   The Trustee shall receive reasonable compensation, as specified in Section 12 of the Trust Agreement, and expense reimbursement for its services under the Trust Agreement in accordance with the schedule attached hereto as Exhibit A, which shall be paid by the Grantor.

4. **Trustee Duties.**

The following provisions shall supplement the Trust Agreement with respect to the rights, duties, liabilities, privileges, and immunities of the Trustee:

(a) The Trustee shall be obligated only to perform the duties specifically set forth in the Trust Agreement. The Trust Agreement and this Addendum set forth all matters pertinent to the Fund contemplated thereunder and hereunder, and no additional obligations of the Trustee shall be inferred from the terms of the Trust Agreement or any other agreement.

(b) No provision of this Agreement shall require the Trustee to risk or advance its own funds or otherwise incur any financial liability in the performance of its duties or the exercise of its rights, where such performance and rights are exercised in a manner consistent with this Agreement.

## 5. Limitation of Liability.

The Trustee shall not be liable for any act or omission while acting in good faith as set forth in Section 18 of the Trust Agreement. The Trustee assumes no responsibility for the validity or sufficiency of any instrument held under the Trust Agreement.

## 6. Notices.

All notices, requests, demands and other communications required under this Agreement shall be in writing in English, and shall be deemed to have been duly given if delivered (i) personally, (ii) by facsimile or electronic mail transmission with written confirmation of receipt, (iii) by overnight delivery with a reputable national overnight delivery service, or (iv) by mail or certified mail, return receipt requested, and postage prepaid. If any notice is mailed, it shall be deemed given five business days after the date such notice is deposited in the United States mail. Any notice given shall be deemed given upon the actual date of such delivery. If notice is given to a party, it shall be given at the address for such party set forth below. It shall be the responsibility of the parties to notify the other party in writing of any name or address changes. In the case of communications delivered to the Trustee, such communications shall be deemed to have been given on the date received by the Trustee.

If to Grantor:

[Mosaic contact information]

If to Trustee:

Wells Fargo Bank, National Association

10 S. Wacker Drive, 13th Floor

Corporate Trust Department

Chicago, IL 60606

Attention: Connie Feltenberger

Telephone: (312) 920-9179

Fax Number: (312) 726-2158

E-mail: feltenbergerc@wellsfargo.com

## 7. Monthly Accounting.

In addition to the Semiannual Accounting required in subsection (a) above, the Trustee shall send statements to the Grantor on a monthly basis, reflecting activity in the Fund for the preceding month.

**IN WITNESS WHEREOF**, the parties hereto have caused this Addendum to be executed by their duly authorized officers on the day and year set forth above.

**Mosaic Fertilizer, LLC, as Grantor**

By: _____

Its: _____

**Wells Fargo Bank, National Association, as Trustee**

By: _____

Connie Feltenberger

Its: Assistant Vice President

## EXHIBIT A

### Trustee Fee Schedule

**Acceptance fee** — Waived

A one-time fee for our initial review of governing documents, account set-up and customary duties and responsibilities related to the closing. This fee is payable at closing.

**Annual administration fee** — $4,500*

An annual fee for customary administrative services provided by the trustee, including daily routine account management; investment transactions; cash transactions processing (including wire and check processing); disbursement of funds in accordance with the Trust Agreement; tax reporting for one entity; and providing account statements to the parties. The administration fee is payable annually in advance per trust account established and is not subject to proration. The first installment of the administrative fee is payable at the time of closing.

**\*Assumes investment in money market mutual funds. Will be subject to change if investments go beyond money market mutual funds.**

**Out-of-pocket expenses** — At cost

Out-of- pocket expenses will be billed as incurred at cost at the sole discretion of Wells Fargo.

**Extraordinary services** — Market rate

Fees for services not contemplated or not specifically covered elsewhere in this schedule will be determined by market rates for such services.

Important information about identifying our customers

*To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person(individual, corporation, partnership, trust, estate or other entity recognized as a legal person) for whom we open an account.*

*What this means for you: Before we open an account, we will ask for your name, address, date of birth (for individuals), TIN/EIN or other information that will allow us to identify you or your company. For individuals, this could mean identifying documents such as a driver's license. For a corporation, partnership, trust, estate or other entity recognized as a legal person, this could mean identifying documents such as a Certificate of Formation from the issuing state agency.*

# ATTACHMENT B

## IRREVOCABLE STANDBY LETTER OF CREDIT

Name and Address of Issuing Institution _____

Regional Administrator(s) _____
Region 4
U.S. Environmental Protection Agency

Secretary _____
Florida Department of Environmental Protection

Dear Sirs or Madams: We hereby establish our Irrevocable Standby Letter of Credit No. ____ in the favor of ["any and all third-party liability claimants" or insert name of trustee of the standby trust fund], at the request and for the account of [owner or operator's name and address] for third-party liability awards or settlements up to [in words] U.S. dollars $ ____ per occurrence and the annual aggregate amount of [in words] U.S. dollars $____ , for sudden accidental occurrences and/or for third-party liability awards or settlements up to the amount of [in words] U.S. dollars $____ per occurrence, and the annual aggregate amount of [in words] U.S. dollars $ , for nonsudden accidental occurrences available upon presentation of a sight draft bearing reference to this letter of credit No.____, and [insert the following language if the letter of credit is being used without a standby trust fund: (1) a signed certificate reading as follows:

### CERTIFICATE OF VALID CLAIM

The undersigned, as parties [insert principal] and [insert name and address of third party claimant(s)], hereby certify that the claim of bodily injury and/or property damage caused by a [sudden or nonsudden] accidental occurrence associated with the Phosphogypsum Stack System Closure, Long Term Care, or Corrective Action at the [principal's] facility should be paid in the amount of $ [  ]. We hereby certify that the claim does not apply to any of the following:

(a) Bodily injury or property damage for which [insert principal] is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that [insert principal] would be obligated to pay in the absence of the contract or agreement.

(b) Any obligation of [insert principal] under a workers' compensation, disability benefits, or unemployment compensation law or any similar law.

(c) Bodily injury to:

(1) An employee of [insert principal] arising from, and in the course of, employment by [insert principal]; or

(2) The spouse, child, parent, brother or sister of that employee as a consequence of, or arising from, and in the course of employment by [insert principal].

This exclusion applies:

(A) Whether [insert principal] may be liable as an employer or in any other capacity; and

(B) To any obligation to share damages with or repay another person who must pay damages because of the injury to persons identified in paragraphs (1) and (2).

(d) Bodily injury or property damage arising out of the ownership, maintenance, use, or entrustment to others of any aircraft, motor vehicle or watercraft.

(e) Property damage to:

(1) Any property owned, rented, or occupied by [insert principal];

(2) Premises that are sold, given away or abandoned by [insert principal] if the property damage arises out of any part of those premises;

(3) Property loaned to [insert principal];

(4) Personal property in the care, custody or control of [insert principal];

(5) That particular part of real property on which [insert principal] or any contractors or subcontractors working directly or indirectly on behalf of [insert principal] are performing operations, if the property damage arises out of these operations.

[Signatures] _____

Grantor _____

[Signatures] _____

Claimant(s) _____

or (2) a valid final court order establishing a judgment against the Grantor for bodily injury or property damage caused by sudden or nonsudden accidental occurrences associated with the Phosphogypsum Stack System Closure, Long Term Care, or Corrective Action at the Grantor's facility or group of facilities.]

This letter of credit is effective as of [date] and shall expire on [date at least one year later], but such expiration date shall be automatically extended for a period of [at least one year] on [date and on each successive expiration date, unless, at least 120 days before the current expiration date, we notify you, the USEPA Regional Administrator for Region 4, the Secretary of the Florida Department of Environmental Protection, and Mosaic Fertilizer, LLC by certified mail that we have decided not to extend this letter of credit beyond the current expiration date.

Whenever this letter of credit is drawn on under and in compliance with the terms of this credit,

we shall duly honor such draft upon presentation to us.

[Insert the following language if a standby trust fund is not being used: "In the event that this letter of credit is used in combination with another mechanism for liability coverage, this letter of credit shall be considered [insert "primary" or "excess" coverage]."

We certify that the wording of this letter of credit is identical to the wording specified in Attachment B to the Consent Decree Modification[1] on [insert effective date of Consent Decree Modification].

[Signature(s) and title(s) of official(s) of issuing institution] [Date].

This credit is subject to [insert "the most recent edition of the Uniform Customs and Practice for Documentary Credits, published and copyrighted by the International Chamber of Commerce" or "the Uniform Commercial Code"].

---

[1] Modification to United States of America and Florida Department of Environmental Protection v. CF Industries, Inc., Civil Action No. 8:10-cv-01756-SCB-EAJ (M.D. Fla. Sept. 28, 2010) on [insert effective date of Consent Decree Modification] ("Consent Decree Modification").

ATTACHMENT C

# HAZARDOUS WASTE FACILITY CERTIFICATE OF LIABILITY INSURANCE

1. [Name of Insurer], (the "Insurer"), of [address of Insurer] hereby certifies that it has issued liability insurance covering bodily injury and property damage to [name of insured], (the "insured"), of [address of insured] in connection with the insured's obligation to demonstrate financial responsibility under Appendix 2 of the Consent Decree entered by the United States District Court for the Middle District of Florida in <u>United States of America and Florida Department of Environmental Protection v. CF Industries, Inc.</u>, Civil Action No. 8:10-cv-01756-SCB-EAJ, on September 28, 2010 ("Consent Decree"). The coverage applies at [list EPA Identification Number, name, and address for each facility] for [insert "sudden accidental occurrences," "nonsudden accidental occurrences," or "sudden and nonsudden accidental occurrences"; if coverage is for multiple facilities and the coverage is different for different facilities, indicate which facilities are insured for sudden accidental occurrences, which are insured for nonsudden accidental occurrences, and which are insured for both]. The limits of liability are [insert the dollar amount of the "each occurrence" and "annual aggregate" limits of the Insurer's liability], exclusive of legal defense costs. The coverage is provided under policy number_____, issued on [date]. The effective date of said policy is [date].

2. The Insurer further certifies the following with respect to the insurance described in Paragraph 1:

(a) Bankruptcy or insolvency of the insured shall not relieve the Insurer of its obligations under the policy.

(b) The Insurer is liable for the payment of amounts within any deductible applicable to the policy, with a right of reimbursement by the insured for any such payment made by the Insurer. This provision does not apply with respect to that amount of any deductible for which coverage is demonstrated as specified in 40 CFR 264.147(f) or 265.147(f).[1]

(c) Whenever requested by a Regional Administrator of the U.S. Environmental Protection Agency (EPA) or the Secretary of the Florida Department of Environmental Protection (FDEP), the Insurer agrees to furnish to both the Regional Administrator and the FDEP Secretary a signed duplicate original of the policy and all endorsements.

(d) Cancellation of the insurance, whether by the insurer, the insured, a parent corporation providing insurance coverage for its subsidiary, or by a firm having an insurable interest in and obtaining liability insurance on behalf of the owner or operator of the hazardous waste management facility, will be effective only upon written notice and only after the expiration of 60 days after a copy of such written notice is received by the Regional Administrator(s) of the EPA Region(s) in which the facility(ies) is(are) located and the FDEP Secretary.

(e) Any other termination of the insurance will be effective only upon written notice and only after the expiration of thirty (30) days after a copy of such written notice is received by the

---

[1] Florida has promulgated financial assurance regulations by adopting by reference 40 CFR Part 264, Subpart H, except as otherwise provided by the Florida Administrative Code ("F.A.C."). <u>See</u> F.A.C. R. 62-730-180(1). FDEP has incorporated by reference all federal regulations cited herein.

Regional Administrator(s) of the EPA Region(s) in which the facility(ies) is (are) located and the FDEP Secretary.

Whenever the terms "EPA Regional Administrator" and "FDEP Secretary" are used, they shall be construed to include the term or "his/her designee." Additionally, the term "Regional Administrator" shall also include the Assistant Administrator of the EPA Office of Enforcement and Compliance Assurance or his/her designee.

I hereby certify that the wording of this instrument is identical to the wording specified in Attachment C to the Consent Decree Modification[2] on [insert effective date of Consent Decree Modification], and that the Insurer is licensed to transact the business of insurance, or eligible to provide insurance as an excess or surplus lines insurer, in one or more States.

[Signature of authorized representative of Insurer]

[Type name]

[Title], Authorized Representative of [name of Insurer]

[Address of Representative]

---

[2] Modification to United States of America and Florida Department of Environmental Protection v. CF Industries, Inc., Civil Action No. 8:10-cv-01756-SCB-EAJ (M.D. Fla. Sept. 28, 2010) on [insert effective date of Consent Decree Modification] ("Consent Decree Modification").

# ATTACHMENT D

Supplemental Signature Page for September 28, 2010 Consent Decree
in *United States v. CF Industries, Inc.*, No. 8:10-CV-1756T24-SCB-EAJ

FOR MOSAIC FERTILIZER, LLC:

Date: 2/28/14

Richard Mack
Executive Vice President and Corporate Secretary
Mosaic Fertilizer, LLC